Alvin **MARTINEZ**, Plaintiff-Appellant,

v.

Jerry **STEINBAUM**, d/b/a S. K. Management Co., Defendant-Appellee.

No. 79SA291.

Supreme Court of Colorado, En Banc.

Feb. 2, 1981.

Christa D. Taylor, Denver, for plaintiff-appellant.

Aronowitz & Helgeson, Thomas C. Helgeson, Arvada, for defendant-appellee.

LOHR, Justice.

Alvin Martinez (appellant) appeals from a judgment of the district court awarding him $60 on his claims for damages arising out of the alleged eviction of the appellant and his family from their unit in a Denver apartment complex. We affirm in part, reverse in part, and remand for further proceedings.

The appellant entered into a month-to-month lease with Steinbaum (landlord) in September 1977. The rental was $165 due on the first of each month, and a damage deposit of $165 was required. The lease provided for automatic renewal unless the party desiring termination should give 30 days notice. The appellant and his family began occupancy sometime in September. On Saturday, November 12, the appellant told Robert Smith, one of the resident managers of the apartment complex, that he and his family were going to assist a rela-tive in moving to Montana. He indicated that he would be back by the following Tuesday. The rent for November had been paid.

The appellant did not return to his apartment in November. The rent for December came due but was not paid. On December 6, during the continuing absence of the appellant, the resident manager posted a notice on the appellant's apartment door requiring him either to pay the rent or quit the premises within three days. *See* section 13–40–104(d), C.R.S.1973. No payment or other response was forthcoming and on December 14 the landlord filed an action in county court under section 13–40–109, C.R.S.1973, for unlawful detention in order to gain possession of the premises. Sometime on the morning of December 15 the sheriff served the appellant by posting the summons and complaint on the door of the apartment. *See* section 13–40–112(2), C.R.S.1973.

That afternoon Smith received a phone call from the appellant, who explained that he was stranded in Montana and was attempting to obtain funds to return to Denver.[1] Neither party mentioned anything about rent. Smith did not tell the appellant about the proceedings commenced against him.

On December 23 judgment for possession was entered by default in Denver county court. However, a writ of restitution was not issued until January 6, 1978. On December 27 Smith changed the lock on the apartment. At that time he noted that the appellant's belongings were undisturbed.

The appellant had left his car, a 1965 Oldsmobile, in the apartment parking lot. On December 15 Smith placed a notice on the car requiring that it be moved within 72 hours. This was not done, so Smith caused the car to be towed away and stored.

---

1. According to the appellant's testimony, he and his family had started to return to Denver shortly after arriving in Billings, Montana. However, a severe snow storm had forced their return to Billings. At that point the appellant did not have sufficient funds for another trip to Denver. Although the appellant attempted to procure the necessary money by appeal to relief agencies and temporary employment, as of December 15, the date of the call to Smith, the appellant had not yet obtained those funds.

The appellant returned to Denver on January 7, 1978. Because the lock had been changed, he could not get into the apartment. Upon inquiring of Smith, the appellant was told that he had to pay in excess of $400, including rent for December and January, attorneys' fees, and other items, before he would be allowed to enter. After contacting one of the landlord's representatives in Denver, the appellant was told he could remove his possessions. The appellant and Smith then entered the apartment and discovered that it had been ransacked. A subsequent investigation revealed that many of the appellant's possessions had been stolen.

When the appellant attempted to obtain his car, he was told by the towing company that he would have to pay $60 storage fees and the towing charge. Lacking the money to pay these charges, he transferred ownership of the car to the towing company.

On January 20 the appellant moved to set aside the default judgment of December 23. The motion was granted and the appellant filed an answer and counterclaims, seeking damages in excess of $1000. The counterclaims were for wrongful eviction, failure to account for the security deposit, wrongful towing of the appellant's car, damages for the belongings which had been stolen during his absence, and other associated matters. Because the relief sought was in excess of the county court's jurisdiction, the case was transferred to district court and consolidated with a case filed in the district court by the appellant against the landlord. In the district court case, the appellant asserted the same claims made by counterclaims in the county court case.

Prior to trial the appellant filed a motion to declare section 13–40–112, C.R.S.1973, unconstitutional because it allows service in an unlawful detention action to be effected by the posting of notice on the premises. This motion was denied.

After the presentation of the appellant's case, the landlord moved to dismiss all the claims against him. The motion was grant-ed with respect to the wrongful eviction and related claims, as well as to the claims for loss of belongings.

At the conclusion of the trial, judgment was entered for the appellant on only the wrongful towing claim. The value of the car was not awarded because the court found that the appellant had failed to mitigate his damages. No proof of the towing charge had been offered. Therefore, judgment was entered for the $60 storage charges.

Thereafter, on the appellant's motion, the trial court made written findings of fact and conclusions of law. These findings included (1) that the landlord had a right to conclude that the appellant had abandoned the premises and the Oldsmobile; (2) that the landlord had a right to apply the security deposit to the back rent; (3) that the landlord did not follow the proper procedure for having an abandoned car towed from private property; and (4) that the appellant's car was worth at least $60.

The appellant's motion for new trial was denied. He now appeals to this court.

## I.

The appellant first asserts as error the trial court's refusal to declare the statutory method of service in unlawful detention actions, section 13–40–112, C.R.S.1973, unconstitutional on its face or as applied in this case. However, the trial court made a specific finding that the landlord had a right to conclude that the appellant had abandoned the apartment. If this finding is supported, the question of notice need not be reached, for a landlord properly can take possession of an abandoned apartment without resort to legal process. *Ruple v. Taughenbaugh*, 72 Colo. 171, 210 P. 72 (1922).[2]

Such a finding would also be conclusive of the claim for wrongful eviction. Because the appellant had voluntarily relinquished his possessory rights in the premis-

2. We need not consider whether the landlord accepted a surrender in taking possession of the apartment. *See Ruple v. Taughenbaugh, supra.*

es, even if the landlord's reentry had constituted an eviction, it would not have been wrongful.

■ Before a finding of abandonment can be made, two elements must be proved, the act of abandonment and an intent to relinquish the premises. *See Berae Co. v. Gorman*, 168 Colo. 551, 452 P.2d 379 (1969); *cf. Hoff v. Girdler Corp.*, 104 Colo. 56, 88 P.2d 100 (1939) (involving abandonment of an oil and gas lease); *see generally* 3A G. Thompson, *Commentaries on the Modern Law of Real Property* (1959 Repl. Vol. by J. Grimes) § 1345; 1 *American Law of Property* § 3.99 (1952). The evidence used to prove intent to abandon may be circumstantial. *Barae Co. v. Gorman, supra*. Intent may be determined from the conduct of the parties. *Id.*

■ In this case the appellant left his apartment, telling the resident manager that he would return in two or three days. It was almost eight weeks before the appellant actually returned. During that time the rent for December and January became due. The appellant did not pay the rent or give notice of termination. In the phone call of December 15 the appellant did not attempt to negotiate an arrangement for deferred payment of the rent in order to continue the lease in effect. Indeed, the question of rent was not even mentioned. The appellant testified that during the telephone call he inquired about his belongings and Smith told him they were locked up in the apartment. The appellant also testified that he told Smith he was making every effort to obtain money to return to Denver to see about his belongings. Smith could not remember that the subject of belongings was discussed, but did not deny that it was. It can be inferred from the record that the appellant intended to abandon the lease and that his concern was limited to the fate of his possessions.

The question of abandonment is one of fact. Therefore, a finding on that question may not be overturned if there is support for it in the record. *Barae Co. v. Gorman, supra*. We conclude that there is sufficient evidence to support the trial court's finding of abandonment.

## II.

The appellant next contends that the trial court erred in finding that he had failed to mitigate the damages[3] caused by the wrongful towing of his car.[4] We disagree.

The trial court stated in its findings of fact and conclusions of law that the landlord did not follow the proper procedure for having an abandoned car towed from private property. *See* section 42–4–1102(3), C.R.S.1973. The trial court further concluded that the car was worth at least $60 (the storage charges) and awarded the appellant $60 in compensation for the landlord's wrongful act. No evidence was introduced concerning the towing charges. The appellant estimated the value of his car at $500. He claims that his financial predicament forced him to transfer ownership of the car to the towing company. Although the appellant testified that the towing company refused to extend the time for payment, there is no evidence that it had a right to demand title to the car for nonpayment. Moreover, the appellant testified that his Denver employer owed him $200 in wages. There is nothing in the record to indicate that this sum could not have been used to pay the towing and storage charges.

In *Valley Co. v. Weeks*, 147 Colo. 591, 364 P.2d 730 (1961), we stated:

"The rule is well settled that one may not recover damages for an injury which he might by reasonable precautions or exertions have avoided [citations omitted]. What constitutes a 'reasonable' precau-

---

3. More properly characterized, the issue is causation. The landlord urges that the cause of the appellant's loss of the car was his legally unrequired transfer of ownership to the towing company. The landlord did not cross-appeal, so the question whether the appellant should

have been awarded even the $60 damages is not before us.

4. The landlord does not contest the trial court's finding that the appellant's car was wrongfully towed from the apartment complex parking lot.

tion is for the trier of facts to determine upon the evidence."

*Id.* at 596, 364 P.2d 730.

■ We conclude that the record supports the trial court's conclusion that the appellant failed to mitigate the damages which resulted from the improper procedure employed by the landlord in causing the car to be towed away.

## III.

Finally, the appellant contends that the trial court's finding that the landlord properly could apply the $165 security deposit for rent owed was in error. We agree.

■ Section 38–12–103(1), C.R.S.1973, expressly requires that, before a landlord can retain a tenant's security deposit, he must "provide the tenant with a written statement listing the exact reasons for the retention of any portion" of that deposit. Failure to provide such a statement within the statutory time limit works a "forfeiture of all [the landlord's] rights to withhold any portion of the security deposit . . . ." Section 38–12–103(2), C.R.S.1973 (1979 Supp.). Compliance with section 38–12–103(1) may be achieved by mailing a statement to the tenant's last known address. In this case, however, there is no evidence in the record that such a statement was so mailed. The appellant testified that he received neither his deposit nor a statement of the charges. Although one of the resident managers, Judy Smith, testified that she prepared and sent a statement of the charges to the landlord's California office, there is no evidence in the record that the statement was subsequently sent by the California office to the tenant's last known address. The landlord therefore forfeited the deposit. Section 38–12–103(2), C.R.S.1973 (1979 Supp.).[5]

■ The appellant also has a right to treble damages for the amount of the forfeited deposit under section 38–12–103(3)(a), C.R.S.1973.[6] To support a treble damage award the retention of the appellant's security deposit must have been both "willful" and "wrongful." *Guzman v. McDonald*, 194 Colo. 160, 570 P.2d 532 (1977). There is no dispute that the retention was willful, *i. e.*, deliberate. *See Turner v. Lyon*, 189 Colo. 234, 539 P.2d 1241 (1975). The landlord had the burden of proving that his withholding of the security deposit was not wrongful. Section 38–12–103(3)(b), C.R.S.1973. Failure to return the deposit, coupled with failure to provide a tenant with the statutorily mandated written statement of reasons for the retention, make the withholding of a deposit wrongful. *Heatherridge Management Co. v. Benson*, 192 Colo. 190, 558 P.2d 435 (1976). Having failed to prove that the required statement of reasons was mailed to the appellant, the landlord did not carry his burden of proof that the withholding of the security deposit was not wrongful. *Cf. Guzman v. McDonald, supra* (giving the required statement of reasons and listing the reasons for retention or partial retention will preclude a finding that the retention was wrongful, in absence of bad faith).

■ As an incident to the treble damages claim the appellant has the right to reasonable attorneys' fees. Section 38–12–103(3)(a), C.R.S.1973; *Guzman v. McDonald, supra; Heatherridge Management Co. v. Benson, supra; Turner v. Lyon, su-*

---

5. The landlord is not precluded from commencing an action for back rent. Having failed to give the statutorily required statement of the reasons for retention of the security deposit, he simply may not use that deposit to satisfy his claim. *Heatherridge Management Co. v. Benson*, 192 Colo. 190, 558 P.2d 435 (1976). No claim for back rent was pled in the instant case.

6. Section 38–12–103(3)(a), C.R.S.1973, provides:

"(3)(a) The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorneys' fees and court costs; except that the tenant has the obligation to give notice to the landlord of his intention to file legal proceedings a minimum of seven days prior to filing said action."

The landlord did not raise any question about compliance with the seven-day notice requirement, and we do not consider that matter.

*pra; Ball v. Weller*, 39 Colo.App. 14, 563 P.2d 371 (1977). Attorneys' fees allowable include those incurred on appeal. *Martin v. Allen*, 193 Colo. 395, 566 P.2d 1075 (1977). A prevailing treble damage claimant is also entitled to court costs. Section 38–12–103(3)(a), C.R.S.1973; e. g., *Turner v. Lyon, supra.*

Because the trial court erred in holding that the landlord had not forfeited the security deposit, and because the withholding of that deposit was both willful and wrongful, we reverse this part of the judgment and remand the case to the district court for entry of an additional award of $495[7] in favor of the appellant and against the landlord, and for further proceedings to determine and award to the appellant reasonable attorneys' fees and court costs incident to the claim for treble damages. In all other respects the judgment of the district court is affirmed.

DUBOFSKY, J., does not participate.

---

**7.** Treble the $165 illegally withheld.