AURELIA LAWRENCE, Plaintiff-Appellant, v. REGENT REALTY GROUP, INC., et al., Defendants-Appellees.

First District (3rd Division)   No. 1—97—1217

Opinion filed August 11, 1999.

David S. Morris, of Chicago, for appellant.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellees.

Lawyers Committee For Better Housing, of Chicago (George R. Hausen, Jr., of counsel), for *amicus curiae*.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:
We review the denial of a motion for a new trial where the trial court found at the close of evidence that a landlord defendant did not willfully violate the Chicago Residential Landlord and Tenant Ordinance. Chicago Municipal Code §§ 5—12—080(c), (f) (amended November 6, 1991). The trial court found that a "pet deposit" required in a lease was a "security deposit" within the meaning of the ordinance. But the court further found that the landlord's failure to pay interest on the deposit was not willful and did not subject the landlord to the penalty of double damages, interest and attorney fees provided for in the ordinance. Because we find that the ordinance is remedial, we hold that a showing of willfulness is not required to subject the landlord to the penalties provided in the ordinance. We reverse and remand.

■ We first take note of our standard of review. The appellant does not suggest one in her brief. The defendants suggest that the trial court should not be reversed unless its judgment is against the manifest weight of the evidence. Neither party addresses the posture of this appeal, which is brought after the denial of a motion for new trial. A trial court's denial of a motion for a new trial will not be reversed absent an abuse of discretion. *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508 (1992). But where the facts are undisputed and the decision turns on a proper interpretation of the law, we review that interpretation as a matter of law. *People v. 1946 Buick, VIN 34423520*, 127 Ill. 2d 374, 378, 537 N.E.2d 748 (1989).

While there were factual disputes that went to the issue of willfulness, none of the disputed facts are implicated in the trial court's finding that willfulness is a predicate for the award of statutory double damages under the ordinance. If, as a matter of law, the ordinance does not require willfulness to award damages, we need never reach the factual disputes about the landlord's behavior. The trial judge in this case did not set out the reasoning that led him to hold that the ordinance before him required a willful violation to trigger penalties. But a willfulness requirement can only stand if the ordinance is penal. We follow in this opinion the reasoning set out in *Friedman v. Krupp*

*Corp.*, 282 Ill. App. 3d 436, 668 N.E.2d 142 (1996), to reach the conclusion that the ordinance is remedial. The sections of the ordinance we address are:

"(c) A landlord who holds a security deposit or prepaid rent pursuant to this section [for more than six months] after the effective date of this chapter shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate [of five percent per year]. The landlord shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due.

\* \* \*

(f) If the landlord or landlord's agent fails to comply with any provision of Section 5—12—080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at [five percent]. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code §§ 5—12—080(c), (f) (amended November 6, 1991).

Defendants suggest in their brief that the statement of facts in the plaintiff's brief contains argument and comment and fails to conform to Supreme Court Rule 341(e)(6). 134 Ill. 2d R. 341(e)(6). We agree, and with a handful of modest changes, adopt the statement of facts set out by the defendants.

Plaintiff and defendant Regent Realty entered into a one-year lease on September 21, 1990. The lease began on October 1, 1990, and ended on September 30, 1991. The monthly rent was $435. Plaintiff paid a $100 pet deposit in addition to a $435 security deposit. The parties renewed the lease five times. Each renewal lease began on October 1 and ended on September 30 of the next year.

The August 1991 renewal lease increased the rent to $455. The security and pet deposits were not increased. The renewal lease showed $26.75 in accrued interest.

The August 1992 renewal lease increased the rent to $460. The security deposit was $461.75. The pet deposit did not increase. The 1992 renewal lease showed $23.09 in accrued interest.

Plaintiff wrote a letter to Regent Realty on December 30, 1992, stating that her interest was incorrectly calculated in the 1992 renewal lease.

The August 1993 renewal lease increased the rent to $465. The security deposit was $484.84. The pet deposit did not increase. The renewal lease showed $24.24 in accrued interest.

The August 1994 renewal lease increased the rent to $475. The se-

curity deposit was $509.08. The pet deposit was not increased. The renewal lease showed $25.45 in accrued interest.

The August 1995 renewal lease increased the rent to $495. The security deposit was $534.53. The pet deposit did not increase. The interest on the security deposit was $26.73.

Plaintiff filed suit against Regent Realty on August 2, 1996. Plaintiff alleged that she paid a $535 security deposit before October 1, 1990. Plaintiff alleged that Regent Realty owed 5% interest on the deposit that it wilfully failed or refused to pay as required under the Residential Landlord Tenant Ordinance. Plaintiff asked for damages equaling twice the security deposit paid to Regent Realty plus interest and attorney fees.

Jay Strauss, an agent of Regent Realty, testified that he knew plaintiff was entitled to interest on her security deposit. Strauss admitted he calculated interest only on the security deposit, not the pet deposit. Strauss said that he thought the pet deposit was a fee or charge, not a security deposit. Plaintiff testified that she sent Regent Realty a letter stating that, in computing her interest, Regent Realty "lost $100."

The trial court found that the pet deposit was a deposit, not a fee or charge. But the court found that Regent Realty's failure to pay interest on the pet deposit was not willful and plaintiff's letter was not specific enough to put Regent Realty on notice that plaintiff was referring to the $100 pet deposit. The court entered an order on December 10, 1996, requiring Regent Realty to refund plaintiff her security deposit and all accrued interest, including the $100 pet deposit. The court then entered judgment for Regent Realty and, in error, "dismissed" plaintiff's complaint. The court denied plaintiff's request to file a petition for fees. The court denied plaintiff's motion for new trial or reconsideration on February 20, 1997. The February 20 order also struck the part of the December 10 order dismissing plaintiff's complaint. Plaintiff filed her notice of appeal on March 20, 1997.

Both parties agree on appeal that whether section 5—12—080(f) is penal or remedial is dispositive. If penal, then defendant argues that the trial court was correct in requiring evidence of willfulness on the part of the landlord. Plaintiff argues that the trial court's ruling is based on an incorrect reading of *Szpila v. Burke*, 279 Ill. App. 3d 964, 665 N.E.2d 357 (1996).

The plaintiff in *Szpila* filed a complaint against the defendant landlord, alleging numerous violations of the ordinance. The plaintiff alleged that the defendant: (1) violated section 5—12—080(d) by failing to send a receipt of repairs; (2) violated section 5—12—080(c) by failing to pay yearly interest on his security deposit; (3) violated sec-

tion 5—12—080(a) by comingling the security deposit with rent funds; and (4) failed to provide plaintiff with a summary of the ordinance, as required by section 5—12—170. *Szpila*, 279 Ill. App. 3d at 967-68.

The parties moved for partial summary judgment, which was granted in the plaintiff's favor. But the court ruled that the plaintiff was entitled to only one penalty under section 5—12—080(f), regardless of the number of violations. *Szpila*, 279 Ill. App. 3d at 969. We agreed, reasoning that, to give effect to the legislative intent behind the ordinance, willfulness had to be read into the ordinance. *Szpila*, 279 Ill. App. 3d at 972-73. We deviate from the *Szpila* holding for the reasons that follow.

. *Szpila* was decided on a peculiar set of facts not present here. First, there were multiple violations of the ordinance alleged in multiple counts. Second, the plaintiff in *Szpila* contributed to the compounding of violations by not acting earlier. *Szpila*, 279 Ill. App. 3d at 972. The theme that runs through *Szpila* is an equitable one: a court will not read a statute in such a way that it yields an unjust result. To the extent that *Szpila* can be read to require proof of willfulness on a single count, we depart from the holding.

The *Szpila* court was confronted with an accumulation of violations that, if enforced, would yield a windfall for the tenant and an economic blow to the landlord out of all proportion to the offense. A remedial statute, however laudable, can be bent out of shape to yield an absurd result. That is what happened in *Szpila*, and the court intervened to prevent a manifest injustice. Had the court strictly adhered to a remedial analysis of the statute, plaintiff would have been awarded $12,044 for defendant's failure to pay $195 interest over a four-year period. No court could condone such a result in good conscience. When the precise reading of a statute yields an absurd result, the reading must be abandoned. *In re A.P.*, 179 Ill. 2d 184, 195, 688 N.E.2d 642 (1997).

We adhere to what we believe is the clear intent of the ordinance: to protect tenants and hold landlords to a high standard of conduct when entrusted with a tenant's money. Chicago Municipal Code § 5—12—010 (amended November 6, 1991).

■ The ordinance "shall be liberally construed *** to promote its purposes and policies." Chicago Municipal Code § 5—12—010 (amended November 6, 1991). Based on this pronouncement, we have found the ordinance remedial in nature. *Friedman*, 282 Ill. App. 3d 436. There we said:

> "[W]e do not agree with defendants' contention that this ordinance is penal rather than remedial in nature. The principles of statutory construction which a court must apply to ordinances

may vary depending upon the kind of legislation to be construed. *City of Evanston v. O'Leary*, 244 Ill. App. 3d 190, 614 N.E.2d 114 (1993). In *O'Leary*, the court liberally construed the Evanston Residential Landlord and Tenant Ordinance (Evanston Municipal Code § 5—3 *et seq.* (1988)) because it found that that ordinance was remedial in nature, not penal, based on its stated purposes. See also *Scott v. Ass'n for Childbirth at Home, International*, 88 Ill. 2d 279, 430 N.E.2d 1012 (1981) (finding that a statute may be remedial in nature, not penal, despite the fact that it imposes large civil penalties in its application). The language of purpose relied upon and quoted by the *O'Leary* court for this finding is virtually identical to that found in both versions of the ordinance at issue here. Chicago Municipal Code § 5—12—010 (September 8, 1986, and 1992) ('this chapter shall be broadly construed *** [its] purpose [is] to protect and promote the public health, safety and welfare of its citizens, [and] to establish the rights and obligations' in the landlord-tenant relationship). Based upon the stated purpose of this ordinance, which is clearly remedial, a rule of liberal construction applies so as to encompass all late rental payment overages, including those structured as part of an early payment discount package." *Friedman*, 282 Ill. App. 3d at 443.

Defendant also relies on *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 691 N.E.2d 782 (1998), in which this court construed the nature of section 5—12—080(f). In *Namur*, we held that the section was penal. *Namur*, 294 Ill. App. 3d at 1011.

The issue in *Namur* was whether the plaintiff's action was time-barred as a statutory penalty under section 13—202 of the Code of Civil Procedure (735 ILCS 5/13—202 (West 1996)). To decide the statute of limitations issue, we had to categorize section 5—12—080(f) as penal or remedial. *Namur* did not address the issue presented by this case: whether plaintiff must prove a willful violation of section 5—12—080(c) before a tenant can recover under subsection (f).

■ The primary role of statutory construction is to give effect to the legislative purpose, and an inquiry into the legislative intent must begin with the language of the statute. *Namur*, 294 Ill. App. 3d at 1011. One clear purpose of the ordinance is to protect tenants. This purpose is rooted in the public policy that recognizes that tenants are in a disadvantageous position with respect to landlords. Viewing section 5—12—080(f) as penal, with respect to the single-count violation, would defeat its remedial purpose. We believe that plaintiff was entitled to double her deposit plus interest earned. Plaintiff was also entitled to a hearing on her petition for attorney fees.

On remand, the trial court is directed to vacate the judgment in favor of defendant Regent Realty and enter judgment for plaintiff for

double the amount of the deposit plus interest. The court should then conduct a hearing on attorney fees. We direct the trial court's attention to the admonitions concerning fees in *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260, 273, 666 N.E.2d 670 (1996). Under *Plambeck*, plaintiff is entitled to a hearing and "reasonable" fees.

Reversed and remanded.

GORDON and BURKE, JJ., concur.