(No. 88237.—

AURELIA LAWRENCE, Appellee, v. REGENT REALTY
GROUP, INC., *et al.*, Appellants.

*Opinion filed July 26, 2001.*

FREEMAN, J., joined by McMORROW, J., dissenting.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellants.

David S. Morris, of Chicago, for appellee.

Sorling, Nothrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen J. Bochenek and James G. Fahey, of counsel), for *amicus curiae* Illinois Association of Realtors.

Holland & Knight LLP, of Chicago (Steven M. Elrod, Peter M. Friedman and Naomi F. Katz, of counsel), for *amicus curiae* Chicago Association of Realtors.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner and Tara L. Goodwin, of Edelman, Combs & Latturner, of Chicago, for *amicus curiae* Illinois Consumer Justice Council, Inc.

Lawrence D. Wood, of Chicago, for *amicus curiae* Legal Assistance Foundation of Chicago.

CHIEF JUSTICE HARRISON delivered the opinion of the court:

Aurelia Lawrence (Lawrence) brought an action in the circuit court of Cook County to recover damages from her landlord, Regent Realty Group (Regent), for failure to make annual interest payments on her security deposit as required by section 5—12—080(c) of Chicago's Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5—12—080(c) (amended November 6, 1991)). The matter was tried before the court, sitting without a jury, which entered judgment in favor of Regent. The court denied Lawrence's claim for double damages as authorized by section 5—12—080(f) of the RLTO (Chicago Municipal Code § 5—12—080(f) (amended November 6, 1991)) and refused to entertain her claim for costs and attorney fees (see Chicago Municipal Code § 5—12—180 (amended November 6, 1991)), but ordered Regent to refund to Lawrence the amount of her security deposit with accrued interest.

Lawrence moved for a new trial or reconsideration. When that motion was denied, she appealed. The appellate court reversed and remanded. It held that Lawrence was entitled to judgment for double the amount of her deposit plus interest, as specified by the Chicago Municipal Code. It further held that Lawrence should be given a hearing on her fee petition and that she was entitled to an award of her reasonable attorney fees. 307 Ill. App. 3d 155, 160-61. We granted Regent's petition for leave to appeal (177 Ill. 2d R. 315) and subsequently allowed the

4

Chicago Association of Realtors and the Illinois Association of Realtors to file *amicus curiae* briefs in support of Regent. We also allowed the Illinois Consumer Justice Council, Inc., and the Legal Assistance Foundation of Chicago to file *amicus curiae* briefs in support of Lawrence. 155 Ill. 2d R. 346. For the reasons that follow, we now affirm the judgment of the appellate court.

The facts, which come to us through a bystanders' report, are straightforward. Lawrence rented an apartment in a building managed by Regent. The apartment was located in the City of Chicago in a building containing more than six residential dwelling units and was subject to the provisions of the RLTO. Lawrence lived there from October 1, 1990, to November 1, 1996. During the term of her occupancy, she received and executed a series of leases. Pursuant to the provisions of those leases, Lawrence paid Regent security deposits, including deposits to cover damage by pets. The security deposits, including the pet deposits, were each held for a period in excess of six months.

During Lawrence's first year in the apartment, Regent paid her interest on the total amount of her security deposit, including the amount designated as a pet deposit. In subsequent years, however, it only paid her interest on the basic security deposit. No interest was paid on the portion of the security deposit designated as the pet deposit. The specifics of each lease follow.

During the first year, which commenced October 1, 1990, and ended September 30, 1991, Lawrence paid Regent a basic security deposit of $435, which was equivalent to one month's rent. She also paid Regent an additional $100 as her pet deposit.

The next year, October 1, 1991, through September 30, 1992, Regent increased Lawrence's monthly rent to $455. Regent carried over her $435 basic security deposit and $100 pet deposit. At the same time, it credited Law-

.rence for $26.75. That sum represented interest earned on the full amount of the $535 security deposit held by Regent during the previous year, calculated at an annual rate of 5%, the amount fixed by law. Regent did not pay this money directly to Lawrence. Instead, it held it as an additional security deposit. Including the interest credit, Lawrence's total security deposit for 1991-92 was $561.75.

In 1992-93, Regent increased Lawrence's monthly rent to $460. It carried over her prior security deposit of $561.75. It also credited Lawrence for an additional $23.09 in interest, which it applied to increase Lawrence's total security deposit to $584.84. The $23.09 was computed by applying the statutory interest rate of 5% to $461.75 of Lawrence's security deposit. For purposes of determining the interest due, Lawrence's $100 pet deposit was not included.

By letter dated December 30, 1992, Lawrence advised Regent that the $100 had not been included in its interest calculation. Lawrence asked that any corrections or explanations regarding the interest calculation be in writing. Regent did not respond. Instead, it continued to exclude that portion of the security deposit attributable to the pet deposit when computing the interest it owed.

During the 1993-94 lease term, Regent increased Lawrence's monthly rent to $465. The $584.84 security deposit was carried over. In addition, Regent credited Lawrence for $24.24 in interest. As in 1992-93, that credit was computed by multiplying the 5% interest rate by the amount of the security deposit less the $100 attributable to the pet deposit. Regent retained this credit and added it to Lawrence's security deposit, increasing the amount of the deposit to $609.08.

For 1994-95, Lawrence's monthly rent was raised to $475. The $609.08 security deposit was carried over, and Regent credited Lawrence for $25.45 in interest, repre-

senting 5% of $509.08, the amount of the prior security deposit excluding the $100 pet deposit. That credit was retained by Regent and added to Lawrence's security deposit, increasing the amount of the deposit to $634.53.

Finally, in 1995-96, Lawrence paid rent of $495 per month. The $634.53 security deposit was carried over, and Regent credited Lawrence for $26.73 in interest, representing 5% of $534.53, the amount of the prior security deposit excluding the $100 pet deposit. As before, that credit was retained by Regent and added to Lawrence's security deposit, increasing the amount of the deposit to $661.26.

The 1995-96 lease was the final agreement between the parties. Under the lease, Lawrence's tenancy was month to month. She terminated her tenancy effective November 1, 1996. Shortly before moving out, she initiated these proceedings in the circuit court of Cook County. As indicated above, Lawrence premised her complaint on Chicago's Residential Landlord and Tenant Ordinance (RLTO). Section 5—12—080 of that ordinance provides:

"(c) A landlord who holds a security deposit or prepaid rent pursuant to this section, after the effective date of this chapter shall pay interest to the tenant accruing from the beginning date of the rental term specified in the rental agreement at the rate [of five percent per year]. The landlord shall, within 30 days after the end of each 12-month rental period, pay to the tenant any interest, by cash or credit to be applied to the rent due.

\* \* \*

(f) If the landlord or landlord's agent fails to comply with any provision of Section 5—12—080(a)-(e), the tenant shall be awarded damages in an amount equal to two times the security deposit plus interest at [five percent]. This subsection does not preclude the tenant from recovering other damages to which he may be entitled under this chapter." Chicago Municipal Code §§ 5—12—080(c), (f) (amended November 6, 1991).

In addition, section 5—12—180 of the ordinance states:

> "Except in cases of forcible entry and detainer actions, the prevailing plaintiff in any action arising out of a landlord's or tenant's application of the rights or remedies made available in this ordinance shall be entitled to all court costs and reasonable attorney's fees ***." Chicago Municipal Code § 5—12—180 (amended November 6, 1991).

In her complaint, Lawrence alleged that the $100 pet deposit was part of the security deposit paid to Regent and that Regent had failed to pay interest on the pet deposit in violation of the ordinance. Based on that violation, Lawrence sought damages, as authorized by the ordinance, in an amount equal to two times the amount of the security deposit, including the pet deposit, plus interest. She also sought the costs of the action and reasonable attorney fees.

At trial, there was no dispute that the apartment leased by Lawrence was subject to the provisions of the RLTO, nor was there any dispute that Regent stopped paying Lawrence interest on the pet deposit portion of her security deposit after the first year of her tenancy. The company's defense was that it did not regard the pet deposit as a security deposit within the meaning of the RLTO's interest requirements and that any violation of the law on its part was unintentional.

In support of its defense, Regent presented the testimony of Jay Strauss, who was the only witness to testify at trial on behalf of the company. Strauss was Regent's chairman and was personally responsible for keeping track of Lawrence's security deposit and calculating the interest Regent was obligated to pay on that deposit. Although Lawrence's $100 pet deposit was specifically included in each lease under the section designated for the security deposit, Strauss claimed that he did not pay interest on that amount for the years 1991 through

1995 because he viewed the pet deposit as a pet "fee" or "charge" and not as a security deposit. Strauss did not explain how he reached that conclusion, nor did he account for why he had credited Lawrence for interest earned on her pet deposit in 1990.

The circuit court rejected Strauss' characterization of the pet deposit, concluding that it did constitute a security deposit for purposes of Chicago's Residential Landlord and Tenant Ordinance. The court nevertheless ruled that Regent's failure to pay interest on the pet deposit was not sufficient to trigger relief under the ordinance. The circuit court accepted Regent's contention that the right to collect double the amount of the security deposit plus interest under the ordinance applied only where the landlord's failure to pay was willful. The court did not believe that condition had been met here. It characterized Regent's failure to pay the full amount of interest due as nothing more than an error of judgment. Accordingly, it entered judgment for Regent, dismissed Lawrence's complaint and denied her request to submit a petition for attorney fees. At the same time, however, it ordered the company to refund Lawrence's security deposit and the interest on that deposit, including the interest attributable to the pet deposit.

Lawrence moved for a new trial or, in the alternative, for reconsideration of the judgment. When that motion was denied, Lawrence appealed. The appellate court rejected the circuit court's interpretation of the RLTO, holding that a showing of willfulness is not required to subject a landlord to the remedies provided under the ordinance. As noted above, the appellate court therefore reversed and remanded with directions to vacate the judgment in favor of Regent, to enter judgment for Lawrence for double the amount of the deposit plus interest, and to conduct a hearing on Lawrence's petition for attorney fees. 307 Ill. App. 3d at 160-61.

We granted Regent's petition for leave to appeal, and the matter is before us for review. The sole issue presented for our consideration is whether the trial court was correct in concluding that the RLTO requires a landlord's violation of the interest payment provisions to have been willful before the tenant is entitled to recover the damages, attorney fees and costs provided by the ordinance. Because that determination turns on the construction and legal effect of the RLTO, our review is *de novo*. See *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260, 266 (1996).

The terms of the pertinent provisions of the RLTO have been set forth above. As we have indicated, the trial court in this case specifically found that the pet deposit given by Lawrence to Regent constituted a security deposit within the meaning of section 5—12—080(c) and that Regent had failed to pay Lawrence any interest on that deposit after the first year of the lease. The trial court's findings are undisputed. Under the clear and unambiguous terms of section 5—12—080(f) of the RLTO, Lawrence was therefore entitled to an award of "damages in an amount equal to two times the security deposit plus interest at [five percent]."

Regent cannot deny that it was fully aware of the law. Under the express provisions of the RLTO, it was required to attach to the lease agreements a copy of a summary of the law, including a summary of the provisions governing the payment of interest. Chicago Municipal Code § 5—12—170 (amended November 6, 1991). That Regent's violation of the ordinance's interest requirements may have been the product of poor judgment, as the trial court believed, is of no consequence. Nothing in section 5—12—080(f) requires proof that the landlord's actions were knowing or willful. A landlord's duty to comply with the statute is absolute. If a landlord

requires a security deposit, the landlord is required to pay the tenant interest on that deposit. If he fails to do so, he is liable to the tenant for the damages specified in the ordinance. There are no exceptions. Where a statute is clear and unambiguous, as this one is, the court should not look to extrinsic aids for construction. *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 87 (1995). The statute must be enforced as written, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *People v. Wright*, 194 Ill. 2d 1, 29 (2000).

Regent argues that a willfulness requirement is necessary to avoid unjust results. That contention is untenable. The purpose of the law is to help protect the rights of tenants with respect to their security deposits, including the right to receive interest. In most cases, the amount of interest landlords owe for security deposits is small, too small to warrant litigation against a landlord who refuses to abide by the law. Without the prospect of liability for significant additional damages, landlords would therefore have little incentive to meet their statutory obligations. They could withhold the interest payments with impunity. And many do. A study cited by plaintiff and presented to the circuit court showed that failure of landlords to pay interest on security deposits is a pervasive problem in the City of Chicago.

The city council has elected to address this problem by imposing an absolute duty on landlords to pay the interest they owe and conferring on tenants the right to recover double the amount of their security deposits when that duty is breached. While one may personally disagree with the wisdom of this choice, it is not this court's function to second-guess the city council's judgment in such matters. As our decisions have made clear,

responsibility for the wisdom or justice of legislation rests with the legislature. Under our system of government, courts may not rewrite statutes to make them consistent with their own ideas of orderliness and public policy. *Wright*, 194 Ill. 2d at 29.

The body of law concerned with the implication of mental states in criminal cases does not support a contrary result. Absolute liability and the implication of mental states in criminal cases have been specifically addressed by the General Assembly. See 720 ILCS 5/4—3(b), 4—9 (West 1998); *People v. Anderson*, 148 Ill. 2d 15, 23-24 (1992). The matter before us, however, is not a criminal case. We deal here with a municipal ordinance. In contrast to matters arising under the Unified Code of Corrections, neither the General Assembly nor the Chicago city council have promulgated rules allowing implication of mental states for ordinance violations where no mental state has been expressly provided.

That willfulness is not required to recover double damages under section 5—12—080(f) of the RLTO is further supported by a comparison between that ordinance and this state's Security Deposit Interest Act (765 ILCS 715/0.01 *et seq.* (West 1998)). In contrast to section 5—12—080(f), the Security Deposit Interest Act imposes statutory penalties for a lessor's failure or refusal to pay interest on security deposits as required by the Act only where such failure or refusal is willful. 765 ILCS 715/2 (West 1998). The willfulness requirement is specifically set forth in the Act, which predates the RLTO. The Chicago city council was presumably aware of that statute when it enacted the ordinance at issue here, but chose not to include the statute's willfulness requirement in its own version of the law. There is no valid basis for regarding that omission as anything but informed and deliberate. Narrowing the ordinance to situations where the landlord acted willfully would, in

fact, run directly counter to the city council's command that the ordinance "shall be liberally construed *** to promote its purposes and policies." Chicago Municipal Code § 5—12—010 (amended November 6, 1991).

*Szpila v. Burke*, 279 Ill. App. 3d 964 (1996), cited by Regent, was properly distinguished by the appellate court. To the extent it might be construed as supporting the circuit court's judgment in the case before us, it is hereby overruled.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

JUSTICE FREEMAN, dissenting:

There are two issues that must be resolved in this case. The first issue is whether the Chicago Residential Landlords and Tenants Ordinance (the Ordinance) (Chicago Municipal Code § 5—12—010 *et seq.* (amended November 6, 1991)) is a remedial ordinance or a penal ordinance. The second issue is what, if any, *scienter* must be shown in an action under the Ordinance. The appellate court found that the Ordinance is remedial and, consequently, a showing of willfulness is not required to subject a landlord to the penalties provided in the Ordinance. 307 Ill. App. 3d 155, 156. The majority affirms. It imposes absolute liability upon landlords for violations of the Ordinance, even though it recognizes that, under the terms of the Ordinance, landlords are subject to "significant additional damages." 197 Ill. 2d at 10. In a case involving a one-year lease and interest of 5% per annum, the "significant additional damages" amount to 40 times the actual damages suffered by the tenant, together with interest, court costs, and attorney fees.

It is exactly because landlords are subject to significant penalties for violations of the Ordinance that I cannot join the majority opinion. I believe that the Ordi-

nance, while remedial in purpose, is also penal. Furthermore, because the provisions of the Ordinance at issue in this appeal are penal, I believe this court may not impose absolute liability upon Regent absent either a clear indication that the legislature intended to impose absolute liability, or an important public policy favoring absolute liability. Instead, I would require that Regent have acted with knowledge, as opposed to either intent or recklessness, to be subject to liability for the violations of the Ordinance.

I do not believe that the Chicago city council intended to punish landlords for inadvertent mistakes and violations of the Ordinance. I do not believe that the Chicago city council intended to force smaller landlords out of business by imposing "significant additional damages" upon these landlords. As expressly stated in section 5—12—010 of the Ordinance, the Chicago city council intended to "establish the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing." To impose "significant additional damages" upon landlords without a requirement of *scienter* is to effectively decrease the number of dwelling units that are available for rental in the City of Chicago. The decision of this court does not further the policies of the Ordinance. Accordingly, I dissent.

## ANALYSIS

### A. Nature of Ordinance

The first issue that must be addressed in this case is whether the Ordinance is remedial or penal. If a statute is penal in nature, this court will not impose absolute liability absent either a clear indication that the legislature intended to impose absolute liability or an important public policy favoring absolute liability. See *People v.*

*Gean*, 143 Ill. 2d 281, 287 (1991). Instead, this court will impose a *scienter* requirement, whether that be intent, knowledge or recklessness. See *People v. Anderson*, 148 Ill. 2d 15, 23 (1992).

Both the circuit court and the appellate court addressed this issue. The majority, however, does not feel constrained to do so. In the absence of any discussion in the majority opinion, I outline my thoughts on the nature of the Ordinance, and the intention of the Chicago city council in enacting the Ordinance.

As noted in the bystanders' report, the circuit court found that Regent's "mistake of judgment" in characterizing the pet deposit as a "fee" or "charge" and not as a "security deposit" did not rise to the level of willfulness, as discussed in *Szpila*, which would support an award of twice the amount of the security deposit.

In *Szpila*, the tenant entered into a one-year lease from May 1, 1989, to May 1, 1990, and paid $975 as a security deposit. At the expiration of the lease term, the parties orally agreed to renew the lease. The building owners deposited rent money they received into the same account in which they held the tenant's security deposit. The tenant vacated the premises on September 30, 1993. The owners claimed that the tenant had admitted breaking a key off in a lock and had requested that the owners deduct the cost of the repair from the security deposit. By October 11, 1993, the owners refunded the tenant $926 of his security deposit. They had deducted $49 from the deposit for the repair, but failed to send the tenant a receipt for the repair. Further, at no time during the tenancy did the owners pay the tenant interest on his security deposit or provide him with a summary of the Ordinance.

In a complaint against the owners, the tenant alleged that the owners had violated: section 5—12—080(a) of the Ordinance, which requires that a landlord keep a

tenant's security deposit in a different account from that used for rent collected; section 5—12—080(c) of the Ordinance, which required a landlord to pay his tenant 5% interest on a security deposit; section 5—12—080(d) of the Ordinance, which requires that a landlord provide the tenant with a receipt for all repair costs deducted from the security deposit; and section 5—12—170 of the Ordinance, which requires that a landlord provide the tenant with a summary of the Ordinance. The tenant claimed a separate violation of section 5—12—080(c) of the Ordinance for each year that the owners failed to pay interest on the security deposit. For each violation of section 5—12—080, the tenant requested two times the security deposit as a penalty under the Ordinance. The tenant also requested the yearly interest payments on the security deposit, and $100 as a penalty under section 5—12—170. In all, the tenant requested $12,044 for the owners' failure to pay him a total of $195 in interest over a four-year period, for the owners' failure to provide him with a summary of the Ordinance, for the owners' failure to send him a receipt for the repair of the lock and for the owners' failure to keep the security deposit in a separate account.

The trial court awarded the tenant the $100 penalty for the owners' failure to give the tenant a summary of the Ordinance, attorney fees and court costs. The trial court also awarded the tenant twice the amount of the security deposit for one of the violations of section 5—12—080. However, the trial court determined that the tenant was not entitled to separate penalties for each violation of section 5—12—080. The appellate court affirmed. Initially, the appellate court noted that section 5—12—080 of the Ordinance does not contain a "willfulness" requirement. The appellate court also noted the rule of statutory construction that when necessary to effectuate the intent of the legislature a court may alter,

supply or modify words and obvious mistakes. The appellate court then stated:

"We judge, therefore, that to avoid the absurd and unjust result urged upon us by the [tenant], the city council intended that violations under the ordinance, in order to be subject to the penalty provisions, must have been willful. At the very least, the [tenant] should have made some requests for the summary, the receipt and the interest payments. ***

For these reasons, the trial judge's holding that the [tenant] was not entitled to separate penalties is affirmed. We note parenthetically, although the [owners] do not cross-appeal, that under our holding the [tenant] should not have received a payment of a sum double the amount of the security deposit under any count." *Szpila v. Burke*, 279 Ill. App. 3d 964, 972-73 (1996).

In *Szpila*, the appellate court did not refer to the Ordinance as being remedial or penal. However, noting the court's reference to willfulness, other panels of the appellate court have stated that *Szpila* found the Ordinance to be penal. See *Namur v. Habitat Co.*, 294 Ill. App. 3d 1007, 1011 (1998); 307 Ill. App. 3d at 156 ("a willfulness requirement can only stand if the ordinance is penal").

In *Namur*, the court held that sections 5—12—080(f) and 5—12—170 of the Ordinance are penal. Initially, the court observed that:

"A statute is penal if it imposes automatic liability for a violation of its terms and if the amount of liability is predetermined by the statute and imposed without actual damages suffered by the plaintiff. [Citation.] A statute is remedial where it imposes liability only for actual damages resulting from a violation." *Namur*, 294 Ill. App. 3d at 1010-11.

The court stated that sections 5—12—080(f) and 5—12—170 of the Ordinance are penal because they specify either the amount of damages that can be awarded for violations or the formula by which the amount of damages is to be calculated. *Namur*, 294 Ill. App. 3d at 1011.

The court also recognized that some portions of the Ordinance are remedial because they permit recovery of actual damages. *Namur*, 294 Ill. App. 3d at 1011.

Other panels of the appellate court have distinguished *Szpila*, or simply refused to follow its reasoning. Thus, in *Friedman v. Krupp Corp.*, 282 Ill. App. 3d 436 (1996), a panel of the appellate court found that the Ordinance is remedial, not penal. The court looked to the statement of purpose contained in section 5—12—010 of the Ordinance to support its finding that the Ordinance is remedial:

> "It is the purpose of this chapter and the policy of the city, in order to protect and promote the public health, safety and welfare of its citizens, to establish the rights and obligations of the landlord and the tenant in the rental of dwelling units, and to encourage the landlord and the tenant to maintain and improve the quality of housing." Chicago Municipal Code § 5—12—010 (amended November 6, 1991).

The court employed a rule of liberal construction to give effect to the Ordinance's stated purpose. *Friedman*, 282 Ill. App. 3d at 443.

Likewise, in the case at bar, the appellate court stated that the clear intent of the Ordinance is to protect tenants and hold landlords to a high standard of conduct when entrusted with a tenant's money. 307 Ill. App. 3d at 159. The court reasoned:

> "The primary role of statutory construction is to give effect to the legislative purpose, and an inquiry into the legislative intent must begin with the language of the statute. [Citation.] One clear purpose of the ordinance is to protect tenants. This purpose is rooted in the public policy that recognizes that tenants are in a disadvantageous position with respect to landlords. Viewing section 5—12—080(f) as penal, with respect to the single-count violation, would defeat its remedial purpose." 307 Ill. App. 3d at 160.

See also *Plambeck v. Greystone Management & Columbia National Trust Co.*, 281 Ill. App. 3d 260 (1996) (directing that the trial court award the tenant damages in an amount equal to two times the security deposit plus inter-

est for the landlord's failure to keep two small increases in the security deposit in a separate account from that used for rent monies, and that the trial court award the tenant an identical sum for the landlord's failure to pay interest on the security deposit).

In *Friedman*, and in the case at bar, the appellate court focused on the statement of purpose to find the Ordinance remedial. I am no less conscious of the purpose of the Ordinance. I am also aware that certain sections of the Ordinance provide damages which are remedial in nature. See Chicago Municipal Code § 5—12—060 (landlord's remedies for improper denial of access to premises); § 5—12—110 (tenant's remedies for landlord's failure to maintain premises); § 5—12—120 (landlord's remedies for early termination of rental agreement); § 5—12—130 (landlord's remedies for tenant's failure to pay rent and failure to maintain premises). However, I cannot agree that the Ordinance is purely remedial.

A remedial statute contemplates recovery of direct damages sustained by reason of the omission or failure of which complaint is made. Compensation for injuries inflicted, not punishment, is the ground of recovery. *Odin Coal Co. v. Denman*, 185 Ill. 413, 417-18 (1900). By contrast, as we explained in *Bell v. Farwell*, 176 Ill. 489 (1898):

> " ' "A penal statute is one which imposes a forfeiture or penalty for transgressing its provisions or for doing a thing prohibited." It is the effect—not the form—of the statute that is to be considered, and when its object is clearly to inflict a punishment on a party for violating it,—*i.e.*, doing what is prohibited or failing to do what is commanded to be done,—it is penal in its character.' " *Bell*, 176 Ill. at 496, quoting *Diversey v. Smith*, 103 Ill. 378, 390 (1882).

See also *Hoffmann v. Clark*, 69 Ill. 2d 402, 429 (1977).

A review of the Ordinance shows that it must be construed as both remedial and penal. For example, section 5—12—080, at issue in this case, provides that the tenant shall be awarded damages in an amount equal to

two times the security deposit plus interest. Section 5—12—150 prohibits retaliatory conduct by the landlord and provides that the tenant shall recover an amount equal to not more than two months' rent or twice the damages sustained by him, whichever is greater, and reasonable attorney fees. Section 5—12—160 prohibits an interruption of the tenant's occupancy and provides that a tenant shall recover an amount equal to not more than two months' rent or twice the actual damages sustained by him, whichever is greater. In addition, section 5—12—160 provides that the Chicago police department shall investigate and determine whether a violation of the section has occurred. Any person found guilty of violating the section shall be fined not less then $200 or more than $500, and each day that such violation shall occur or continue shall constitute a separate and distinct offense for which a fine shall be imposed. These damage provisions give a tenant an incentive to enforce the Ordinance. Concurrently, the provisions serve to discourage future violations of the Ordinance by landlords. I, therefore, conclude that the Ordinance is both remedial and penal.

That a statute may be both remedial and penal is well supported in our jurisprudence. See *Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 361 (1986) ("Although we believe that section 3—602 [of the Nursing Home Care Reform Act of 1979] was enacted primarily to encourage private enforcement of the Act and to compensate residents for violations of their rights, we agree that the section also must be construed as being punitive"); *Acme Fireworks Corp. v. Bibb*, 6 Ill. 2d 112 (1955); *Cedar Park Cemetery Ass'n v. Cooper*, 408 Ill. 79 (1951); *Howlett v. Doglio*, 402 Ill. 311, 318 (1949) ("Although the Dram Shop Act is penal in character and should be strictly construed, [citations] the legislation is, at the same time, remedial and should be so construed as to suppress the mischief and advance the remedy"); *Bell*, 176 Ill. at 496,

quoting *Diversey*, 103 Ill. at 390 (" ' "A penal law may also be remedial, and a statute may be remedial in one part and penal in another" ' "). See also 73 Am. Jur. 2d *Statutes* §§ 13, 292 (1974); 3 N. Singer, Sutherland on Statutory Construction § 60.04 (5th ed. 1992).

I believe that a balanced approach, which recognizes that certain portions of the Ordinance are remedial and certain portions are penal, furthers the goal of the Ordinance to promote the public health, safety and welfare of the citizens of Chicago by establishing the rights and obligations of the landlord and the tenant in the rental of dwelling units, and encouraging the landlord and the tenant to maintain and improve the quality of housing.

The majority rejects such a balanced approach. Instead, the majority states "[t]he purpose of the law is to help protect the rights of tenants with respect to their security deposits, including the right to receive interest." 197 Ill. 2d at 10. The majority nowhere acknowledges the Chicago city council's intention to establish the rights of landlords, and to protect both landlords and tenants in order to promote the goal of quality housing. In my view, the majority's approach to the Ordinance is unbalanced, serving as it does the interests of only one of the two constituencies the Chicago city council intended to protect.

### B. *Scienter* Requirement

The second issue that must be addressed is the *scienter* requirement for a violation of the Ordinance. Turning to section 5—12—080 of the Ordinance, I note that it provides the tenant shall be awarded damages in an amount equal to two times the security deposit, together with interest, court costs and attorney fees for a violation of the section. Thus, section 5—12—080 is penal in nature.

As noted in the bystanders' report, the circuit court

concluded that a finding of willfulness was required in order for Lawrence to recover damages pursuant to section 5—12—080. In this appeal, Lawrence maintains that the circuit court erred in holding that a finding of willfulness was required in order for Lawrence to recover damages pursuant to section 5—12—080 of the Ordinance. Pointing to the lack of express language describing a mental state, Lawrence explains that the Chicago city council intended to impose strict and certain liability for violations of section 5—12—080. Lawrence concludes that a finding of willfulness, or any other *scienter* requirement, is not necessary for recovery under section 5—12—080. The majority agrees.

In considering whether a statute imposes absolute liability for certain conduct, the fact that the statute does not contain express language calling for a mental state does not, of itself, lead to a conclusion that no mental state is required. *People v. Farmer*, 165 Ill. 2d 194, 202-03 (1995); *People v. Whitlow*, 89 Ill. 2d 322, 332 (1982); *People v. Nunn*, 77 Ill. 2d 243, 250 (1979). This court looks, instead, to sources beyond the statutory language to ascertain the intent of the legislature and determine whether the conclusion that the statute imposes absolute liability is warranted. *Farmer*, 165 Ill. 2d at 205-06; *People v. Sevilla*, 132 Ill. 2d 113, 118-19 (1989). This court has heretofore recognized that the penalty for a violation of a statute is an important factor in determining whether the legislature intended to impose absolute liability. *Gean*, 143 Ill. 2d at 287; *Sevilla*, 132 Ill. 2d at 122. Where the penalty for a violation of a statute is great, it is less likely that the legislature intended to create an absolute liability offense. *Farmer*, 165 Ill. 2d at 206; *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 425 (1978). Absent either a clear indication that the legislature intended to impose absolute liability, or an important public policy favoring absolute liability, this court has generally not

been willing to interpret a statute as imposing absolute liability. See *Gean*, 143 Ill. 2d at 286 (and cases cited therein).

As Lawrence notes, section 5—12—080 does not contain a mental state element. Moreover, the balance of the Ordinance does not contain a clear indication that the Chicago city council intended to impose absolute liability for violations of the section.[1] The penalty imposed under section 5—12—080 (twice the amount of the security deposit plus interest, court costs, and attorney fees) can be substantial. And, with respect to a landlord's failure to pay interest on the security deposit, as well as the landlord's failure to segregate the security deposit from other assets, the damages recovered by the tenant will be totally disproportionate to the loss he suffers. Given the lack of clear legislative intent and the implications to the landlord for failure to pay interest on the security deposit, I am of the opinion that the Chicago city council did not intend to impose absolute liability for violations of section 5—12—080.

The majority disagrees. It finds that the Ordinance is "clear and unambiguous." From there, it concludes that the Ordinance must be enforced as written, without resort to extrinsic aids for construction. See 197 Ill. 2d at 10. The majority fails to recognize, however, that in considering whether a statute imposes absolute liability for certain conduct, the fact that the statute does not contain express language calling for a mental state does not, of itself, lead to a conclusion that no mental state is required. By limiting its analysis to the "clear and unambiguous" language of the Ordinance, the majority

[1] There are no records of Chicago city council proceedings regarding the Ordinance. Thus, this court does not have a source of "legislative history" from which it could infer the intent of the Chicago city council.

fails to determine the actual intent of the Chicago city council in enacting the Ordinance.[2]

When a statute neither prescribes a particular mental state nor creates an absolute liability offense, either intent, knowledge or recklessness applies. *Anderson*, 148 Ill. 2d at 23; *Gean*, 143 Ill. 2d at 288. In determining the appropriate mental state, this court looks to other provisions in the statute, or to the language of any parallel statute. *Sevilla*, 132 Ill. 2d at 123-24.

Three other provisions of the Ordinance are instructive. Section 5—12—150 provides that a landlord may not *knowingly* terminate a tenancy or refuse to renew a lease because the tenant has complained of code violations, sought assistance to remedy a code violation or requested that the landlord make repairs to the premises. A tenant shall recover an amount equal to two months' rent or twice the damages sustained by him, whichever is greater, for a violation of this provision. Section 5—12—160 provides that it is unlawful for any landlord *knowingly* to oust or dispossess or threaten or attempt to oust or dispossess a tenant from a dwelling unit without authority of law. A tenant shall recover an amount equal to two months' rent or twice the damages sustained by him, whichever is greater, for a violation of this provision. Lastly, section 5—12—110 provides that if a person's failure to deliver possession of a dwelling unit is *willful*, an aggrieved person may recover from the person

---

[2]Although the majority states that it is not relying on "extrinsic aids for construction," the majority cites to a 1995 study for the proposition that "failure of landlords to pay interest on security deposits is a pervasive problem in the City of Chicago." See 197 Ill. 2d at 10. The majority also looks to the Security Deposit Interest Act (765 ILCS 715/0.01 *et seq.* (West 1998)) as an aid in construing the Ordinance. See 197 Ill. 2d at 11 ("The Chicago city council was presumably aware of that statute when it enacted the ordinance at issue here, but chose not to include the statute's willfulness requirement in its own version of the law").

withholding possession an amount not more than two months' rent or twice the actual damages sustained, whichever is greater. All three provisions thus require that the landlord have acted with knowledge in committing the particular infraction. See 720 ILCS 5/4—5 (West 1998) (conduct performed knowingly or with knowledge is performed willfully, within the meaning of a statute using the term "wilfully," unless the statute clearly requires another meaning).

I also find instructive the language of the Security Deposit Interest Act (765 ILCS 715/1 *et seq.* (West 1998)). Section 1 of the Security Deposit Interest Act provides that, with respect to buildings or complexes containing at least 25 units, a landlord who receives a security deposit from a tenant shall pay interest to the tenant if the landlord holds the deposit for more than six months. 765 ILCS 715/1 (West 1998). A landlord who willfully fails or refuses to pay the interest required by the act shall, upon a finding by a circuit court that the landlord has willfully failed or refused to pay, be liable for an amount equal to the amount of the security deposit together with court costs and reasonable attorney fees. 765 ILCS 715/2 (West 1998); see also *Gittleman v. Create, Inc.*, 189 Ill. App. 3d 199 (1989) (finding a violation of the Security Deposit Interest Act where the landlord was fully aware of its legal obligation to pay interest on the security deposits but attempted to circumvent the statute by claiming, contrary to a lease provision setting the rent at $300, that the gross rent was actually $301.25; that the tenant paid only $300 per month; and that $1.25 was credited each month to the tenant's account as interest on the security deposit).

Many of our sister states have adopted legislation regulating payment of interest on security deposits and the return of the security deposits. The enactments fall into four categories: (1) those imposing absolute liability

for any retention of the security deposits in violation of the statute; (2) those prohibiting unreasonable retention of the security deposits, that is a retention without reasonable justification or basis as determined by a fact finder; (3) those prohibiting wrongful and willful retention of the security deposits; and (4) those prohibiting bad-faith retention of the security deposits. See Annot., 63 A.L.R.4th 901 (1988). Within the enactments proscribing wrongful and willful retention, certain statutes have been interpreted as requiring only deliberate or intentional conduct (see *Martinez v. Steinbaum*, 623 P.2d 49 (Colo. 1981)), while others have been interpreted as requiring bad-faith retention (see *Karantza v. Salamone*, 435 A.2d 1384 (Me. 1981)) or an arbitrary and unjustified withholding (see *Calix v. Whitson*, 306 So. 2d 62 (La. App. 1974)).

My review of the other portions of the Ordinance, the Security Deposit Interest Act, and parallel enactments in our sister states convinces me that knowledge, as opposed to either intent or recklessness, is the appropriate mental state for a violation of section 5—12—080 of the Ordinance. Knowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful. See *Sevilla*, 132 Ill. 2d at 125. In arriving at this conclusion, I am keenly aware that the Ordinance is both penal and remedial. I believe that a requirement that the landlord have acted intentionally or with bad faith is not in keeping with the remedial purpose of the Ordinance. Such a holding would set too high a bar to recovery under section 5—12—080 of the Ordinance. On the other hand, I believe that knowledge is required for a violation of the section. Such a requirement furthers the remedial purpose of the Ordinance while appropriately restricting the penal consequences of the section by excluding violations which are merely inadvertent.

The majority rejects my conclusion. The majority states that: "The body of law concerned with the implication of mental states in criminal cases does not support a contrary result." 197 Ill. 2d at 11. Further, the Chicago city council has not "promulgated rules allowing implication of mental states for ordinance violations where no mental state has been expressly provided." 197 Ill. 2d at 11. Thus, the majority concludes that the law regarding *scienter* does not apply to a municipal ordinance.

The majority's reasoning is based on the premise that the title of a statute is more important than its substance, a premise this court has heretofore rejected. See *Bell*, 176 Ill. at 496 ("It is the effect—not the form—of the statute that is to be considered, and when its object is clearly to inflict a punishment on a party for violating it,—*i.e.*, doing what is prohibited or failing to do what is commanded to be done,—it is penal in its character"). What matters that the Ordinance is a municipal ordinance if the relevant provisions are penal in nature? If the provisions are intended to impose "significant" penalties upon a landlord, and, if the Ordinance does not contain a clear indication that the Chicago city council intended to impose absolute liability for violations of the Ordinance, this court must impose a *scienter* requirement.

I note that in *People v. O'Brien*, 197 Ill. 2d 88 (2001), a case filed concurrently with the case at bar, this court rejects the narrow approach to the application of *scienter* the majority here advances. Instead, in *O'Brien*, this court recognizes that the *scienter* requirement of section 4—9 of the Criminal Code of 1961 (720 ILCS 5/4—9 (West 1998)): "applies to all criminal penalty provisions, including those outside the Criminal Code of 1961." *O'Brien*, 197 Ill. 2d at 91. Thus, the *O'Brien* court applies "[t]he body of law concerned with the implication of mental states in criminal cases" (197 Ill. 2d at 11 (*supra*)) in

determining whether section 3—707 of the Illinois Vehicle Code (625 ILCS 5/3—707 (West 1998)) creates an absolute liability offense.

The *O'Brien* court recognizes that the substance of a statute and the nature of the penalties imposed by the statute are to be taken into account in determining whether the legislative body intended to create an absolute liability statute.

## CONCLUSION

Today, the majority imposes absolute liability upon a landlord for a violation of the Ordinance. The majority does so because it believes that "failure of landlords to pay interest on security deposits is a pervasive problem in the City of Chicago." 197 Ill. 2d at 10. This belief rests largely upon a 1995 study that Lawrence cited to the circuit court. I agree that certain landlords are lax in the payment of interest on their tenants' security deposits, and should be held accountable under the Ordinance. I cannot agree, however, that a study performed several years after the Ordinance was adopted is instructive on the intent of the Chicago city council in enacting the Ordinance.

Further, I cannot agree that punishing landlords for inadvertent infractions of the Ordinance best serves the interests of tenants and the City of Chicago in quality housing. The penalties imposed by the Ordinance are substantial. They apply to landlords who own large buildings as well as the landlord whose building contains only six apartments. If the penalties accumulate over the length of a long-term lease, or are multiplied by a number of tenants, they may devastate the smaller landlord. I do not believe that the Chicago city council intended to force smaller landlords out of business. Instead, I believe that the Chicago city council intended to punish landlords only for knowing violations of the Ordinance. Where a landlord inadvertently violates the Ordinance, for

28

example by entering the wrong number on a calculator, the landlord should not be liable for "significant additional damages." Accordingly, I dissent.

JUSTICE McMORROW joins in this dissent.