MICHAEL FRIEDMAN *et al.*, Indiv. and on Behalf of All Other Persons Similarly Situated, Plaintiffs-Appellants, v. KRUPP CORPORATION *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—94—3294

Opinion filed June 28, 1996.

Baskin, Server, Berke, Weinstein & Sprio, of Chicago (Perry M. Berke and John R. Malkinson, of counsel), for appellants.

Stamos & Trucco, of Chicago (James J. Stamos, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, Michael Friedman, Todd Seltzer and Julie Pener, representing all other tenants similarly situated, filed a class action suit seeking statutory damages against defendants, the owners-operators of residential apartment buildings in Chicago in which plaintiffs resided. After class certification and various amendments and procedural events not part of this appeal, plaintiffs filed a two-count, third amended complaint. In the first count, plaintiffs alleged that the leases issued to them by defendants for their apartments improperly included excessive late rental payment penalties in violation of the Chicago Residential Landlords and Tenants Ordinance (Chicago Municipal Code § 5—12—010 *et seq.* (September 8, 1986)) (the pre-1992 Ordinance), which was subsequently amended in 1992 (Chicago Municipal Code § 5—12—010 *et seq.* (1992)) (the amended Ordinance). In the second count, which is not before us in this appeal, plaintiffs made similar allegations with respect to provisions in different apartment leases. Defendants moved to dismiss count I of

the third amended complaint pursuant to section 2—615 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—615 (West 1994)) for its failure to state a cause of action under the pre-1992 Ordinance. The trial court granted that motion, from which plaintiffs appeal pursuant to Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

The pre-1992 Ordinance provides in pertinent part as follows:

"**5—12—140 Rental agreement.**

*** [N]o rental agreement may provide that the landlord or tenant:

\* \* \*

(h) Agrees that a tenant shall pay a charge, fee or penalty in excess of $10.00 per month for the late payment of rent." Chicago Municipal Code § 5—12—140 (September 8, 1986).

The amendment to section 5—12—140, effective January 1, 1992, provides as follows:

"**5—12—140 Rental agreement.**

*** [N]o rental agreement may provide that the landlord or tenant:

\* \* \*

(h) Agrees that a tenant shall pay a charge, fee or penalty in excess of $10.00 per month for the first $500.00 in monthly rent plus five percent per month for any amount in excess of $500.00 in monthly rent for the late payment of rent;

(i) Agrees that, if a tenant pay rent before a specified date or within a specified time period in the month, the tenant shall receive a discount or reduction in the rental amount in excess of $10.00 per month for the first $500.00 in monthly rent plus five percent per month for any amount in excess of $500.00 in monthly rent." Chicago Municipal Code § 5—12—140 (1992).

The third amended complaint alleged that between November 6, 1986, and January 1, 1992, during which time the pre-1992 Ordinance was in effect, defendants owned and operated three residential apartment buildings in which plaintiffs who represent the class resided pursuant to lease agreements drafted by defendants. Plaintiffs further alleged that those leases violated the pre-1992 Ordinance, insofar as they effectively provided for late rental payment penalties in excess of $10 per month, and that defendants deliberately disguised those penalties by characterizing them as "discounts" in an attempt to circumvent the proscriptions of the pre-1992 Ordinance. Plaintiff Friedman alleged that his lease provided that his rent was $625 per month to be discounted by $30 if paid by the first of the month. But, Friedman averred that his rent was actually $595, and that the $30 "discount" was, in reality, a disguised $30 penalty for any failure to

pay the rent by the first of each month. The complaint made substantially similar allegations with respect to the rents, discounts and penalties in the leases of plaintiffs Seltzer and Pener. It further alleged that defendants' own computerized bookkeeping ledger, not provided as an exhibit to the complaint, described the rent due each month for Friedman's apartment as $595, not $625, and categorized the $30 amount, due upon failure to pay the rent by the first of each month in an entry labelled as "Lte."

Attached to the complaint were several exhibits, including the lease issued to plaintiff Friedman, rental payment and other receipts, an invoice, and a form letter sent by defendants to plaintiffs regarding the payment of rent. In the lease issued to Friedman, the monthly rent was stated as "Monthly Rent $625.00**." (Emphasis in original.) The asterisks next to that figure pointed to the "Additional Agreements" section of the lease, which stated in pertinent part that "Lessee will receive a thirty ($30.00) dollar discount provided the rent is paid on or before the first of the month." Friedman initialed that section. The lease also separately required that the "[t]enant shall pay the Monthly Rent to Lessor or Lessor's agent on the first day of each month in advance" and provided for a late rental payment fee, as follows:

"**4. Late Fee** The Monthly Rent shall be automatically increased $10.00 as additional rent if received by Lessor after the 5th of the month for which it is due."

The receipts which were attached as exhibits to plaintiffs' complaint reflected Friedman's monthly rent as "Rental Rate $595" in exchange for his application fee and deposit payments. Friedman also received a receipt which read "$595 Sept. rent," in exchange for his advance September 1991 rental payment, and a similar receipt which read "$595.00 for Oct—Rent," in exchange for his October 4, 1991, payment of his October 1991 rent. The complaint recites that with respect to that October 4 rental payment, Friedman received an invoice from defendants which indicated that his account had a $30 outstanding balance, "due to the fact that all payment was not included in this months [sic] monies that you submitted to us." Friedman paid that $30.

After the ordinance was amended, defendants sent a form letter to plaintiffs, attached to the complaint, and which provided as follows:

"1. According to the new ordinance, your apartment rent will be $595.00 as of January 1, 1992. This reflects the amount you have been paying on the first of each month since the commencement of your current lease.

2. Late fees will remain at the $10.00 charge for the duration of your current lease. Upon signing a new lease, the late charges will be assessed based upon a $10.00 fee for the first $500.00 of rent plus 5% for any portion of rent which exceeds $500.00."

According to the complaint, all plaintiffs received a copy of this letter, in which the "rent will be $_____" blank for every tenant was exactly $30 less than the rent stated in their leases.

In granting defendants' section 2—615 motion to dismiss count I, the trial judge stated that plaintiffs had failed to show that discounts were regulated by the pre-1992 Ordinance in light of the fact that the amended Ordinance expressly regulated discounts, while the pre-1992 Ordinance did not, and had failed to show that defendants' discount provisions were, in effect, disguised penalties which violated the earlier ordinance. Plaintiffs appeal from that ruling.

A motion to dismiss pursuant to section 2—615 of the Code attacks the legal sufficiency of the complaint for having failed to set forth a legally recognized claim as its basis for recovery or for having failed to plead facts which bring a claim within the legally recognized cause of action alleged. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 639 N.E.2d 1282 (1994); *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 563 N.E.2d 1031 (1990). Such motions admit all well-pleaded facts in the complaint and those contained in exhibits to the complaint, together with all reasonable inferences that can be gleaned from those facts, but do not admit conclusions of law or conclusions of fact unsupported by allegations of specific fact. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322 (1995); *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 503 N.E.2d 246 (1986); *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772 (1994). The exhibits attached to the complaint control; allegations inconsistent with facts in the exhibits must be ignored. *In re Estate of Davis*, 225 Ill. App. 3d 998, 589 N.E.2d 154 (1992); *Perkaus v. Chicago Catholic High School Athletic League*, 140 Ill. App. 3d 127, 488 N.E.2d 623 (1986). Appellate review of a dismissal pursuant to a section 2—615 motion is *de novo*. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 619 N.E.2d 732 (1993).

In order to determine whether the allegations in plaintiffs' complaint state a cause of action under the pre-1992 Ordinance, we must first determine whether there is any substantive difference between a discount and a penalty, or whether the difference between the two concepts is merely semantic and superficial, which would permit defendants to simply restructure the words and operative order of a penalty provision, label it as a discount and thereby evade the proscriptions of the pre-1992 Ordinance with impunity.

■ A discount is generally defined as "an abatement or reduction made from the gross amount or value of anything [such] as *** a reduction from a price." Webster's Third New International Dictionary 646 (1993). Cash discounts to a consumer are offered as incentives for prompt payment to alleviate accounts receivable collection problems suffered by suppliers. See generally W. Pride & O. Ferrell, Marketing, at 445 (3d ed. 1983). Discounts are used to encourage certain behavior not otherwise required of a party and are implemented by rewarding that behavior through assuming some detriment in the hopes of achieving some corresponding gain. See, *e.g., Saxon-Western Corp. v. Mahin*, 81 Ill. 2d 559, 411 N.E.2d 242 (1980) (noting that retailer had foregone realizing cash receipts by issuing discount coupons in hope of increasing volume of his business). See also *Northern Illinois Home Builders Ass'n v. County of Du Page*, 165 Ill. 2d 25, 649 N.E.2d 384 (1995) (discussing ordinance that offered 15% discount to encourage the use of payment according to a certain fee schedule); *Ted Sharpenter, Inc. v. Illinois Liquor Control Comm'n*, 119 Ill. 2d 169, 518 N.E.2d 128 (1987) (discussing plaintiff's practice of offering different discounts to different classes of customers in the hopes of maximizing sales at the lowest cost possible). Thus, it would seem that a discount is a reduction in the price to be paid in order to create incentives for behavior not otherwise required of or expected from the discountee.

■ In contrast, a "penalty" is generally defined as an increase above a price that two parties agreed would be paid, assessed upon one of the parties for his failure to behave in a manner consistent with the agreement existing between them. See generally Webster's Third New International Dictionary 1668 (1993) (a penalty is the "sum to be forfeited to which a person subjects himself by covenant or agreement in case of nonfulfillment of stipulations"); Black's Law Dictionary 1133 (6th ed. 1990) (a penalty "involves [the] idea of punishment[,] *** operates to compel performance of [an] act and usually becomes effective only in [the] event of default on which a forfeiture is compelled").

It would therefore appear that the concepts of discounts and penalties centrally relate to a base price designed to reflect a value before the incentive of a discount or the disincentive of a penalty is interposed. Hence, the differences between a discount and a penalty are not a mere matter of semantics, but, rather, have substantive connotations, both in their respective purposes and in their implementation. Simply relabelling a lease's penalty provision as a "discount," calling the higher, penalized price figure the apartment's base price and then referring to what is in fact the actual price as

the discounted price would not be effective to avoid the consequences of the statute.

While we do not purport to perform a marketing analysis, it is clear in this case that there is a question as to base price with respect to the issue of whether the lease contained a discount or a penalty. This question exists despite the fact that the lease purports to state the "rent," because it is inferable from defendants' conduct as alleged in the complaint that what was referred to in the lease as the "rent" was not the actual rent. These allegations in plaintiffs' complaint, in their totality, support the conclusion that the sum referred to in the lease as the "rent" is in fact a sum higher than what the parties understood between themselves to be the actual rent, because it incorporates a penalty.

First, the facts alleged in the complaint show that defendants themselves viewed the lower amount of $595 as the true rent and the $625 amount as one which included a $30 penalty for late rental payments. Thus, the complaint alleges that defendants' internal computerized bookkeeping ledger reflected that the monthly rent for every tenant was actually the stated rent *less* the $30 figure, and that that ledger categorized the $30 figure as "Lte." Plaintiffs' complaint also alleged that when the ordinance was amended to explicitly restrict the use of discounts as well as penalties, Friedman received from defendants at the end of 1991 a form-letter, which stated as follows:

> "According to the new ordinance, your apartment rent will be *$595.00* as of January 1, 1992. *This reflects the amount you have been paying on the first of each month since the commencement of your current lease.*" (Emphasis added).

The reference in the complaint to this letter creates a reasonable inference that the defendants considered the actual rent to be $595, $30 less than the stated rent of $625, an amount that included a $30 disguised penalty. Additionally, the complaint alleged that before and after executing the lease agreement, defendants' leasing agents provided Friedman with receipts, attached to the complaint as exhibits, which reflected that the rental rate was actually $595. These allegations, which were included in the complaint without objection, must for purposes of a section 2—615 motion be taken as true along with the reasonable inferences that may be drawn from them. *Calloway v. Kinkelaar*, 168 Ill. 2d 312, 659 N.E.2d 1322; *American Health Care Providers, Inc. v. County of Cook*, 265 Ill. App. 3d 919, 638 N.E.2d 772. If in fact, as we have established, the true base price is not determined simply by the label that the vendor attaches to it, but, rather, has substantive, independent meaning, then the complaint is

sufficient to state a cause of action predicated upon its allegations that the defendants violated the pre-1992 Ordinance by charging a disguised penalty in excess of the $10-per-month limit imposed by that ordinance.

Defendants contend that the pre-1992 Ordinance was penal in nature and must therefore be strictly construed. Accordingly, defendants argue that since the old ordinance did not *expressly* purport to regulate discounts, plaintiffs cannot now make a claim under that ordinance for charging an undiscounted rental rate where payment was made later than the date specified for discount eligibility. However, even if defendants were correct in characterizing the ordinance as penal, we would not be so restricted under the allegations of this complaint, which for purposes of defendants' section 2—615 motion is determinative. Under the inferences to be drawn from the allegations in this complaint, we are not confronted with *true* discounts, but with *false* discounts, or, more aptly, with disguised penalties. Even if strictly construed, the pre-1992 Ordinance arguably purports to regulate penalties under *any* label, and, therefore, may be construed to regulate disguised penalties as well.

Moreover, we do not agree with defendants' contention that this ordinance is penal rather than remedial in nature. The principles of statutory construction which a court must apply to ordinances may vary depending upon the kind of legislation to be construed. *City of Evanston v. O'Leary*, 244 Ill. App. 3d 190, 614 N.E.2d 114 (1993). In *O'Leary*, the court liberally construed the Evanston Residential Landlord and Tenant Ordinance (Evanston Municipal Code § 5—3 *et seq.* (1988)) because it found that that ordinance was remedial in nature, not penal, based on its stated purposes. See also *Scott v. Ass'n for Childbirth at Home, International*, 88 Ill. 2d 279, 430 N.E.2d 1012 (1981) (finding that a statute may be remedial in nature, not penal, despite the fact that it imposes large civil penalties in its application). The language of purpose relied upon and quoted by the *O'Leary* court for this finding is virtually identical to that found in both versions of the ordinance at issue here. Chicago Municipal Code § 5—12—010 (September 8, 1986, and 1992) ("this chapter shall be broadly construed *** [its] purpose [is] to protect and promote the public health, safety and welfare of its citizens, [and] to establish the rights and obligations" in the landlord-tenant relationship). Based upon the stated purpose of this ordinance, which is clearly remedial, a rule of liberal construction applies so as to encompass all late rental payment overages, including those structured as part of an early payment discount package.

Defendants further contend that because the *amended* Ordinance

expressly regulates discounts while the pre-1992 Ordinance does not, the pre-1992 Ordinance cannot be construed to regulate them and, therefore, plaintiffs' complaint was properly dismissed. It is true that ordinarily a statutory amendment creates a presumption that its drafters intended to *change* the law as it formerly existed, not merely to clarify or interpret it. *Hession v. Illinois Department of Public Aid*, 129 Ill. 2d 535, 544 N.E.2d 751 (1989); *Potts v. Industrial Comm'n*, 83 Ill. 2d 48, 413 N.E.2d 1285 (1980). However, that presumption is overcome where the nature of that amendment suggests that its drafters intended to interpret or clarify the original statute. *Potts v. Industrial Comm'n*, 83 Ill. 2d 48, 413 N.E.2d 1285; *Old Ben Coal Co. v. Illinois Human Rights Comm'n*, 150 Ill. App. 3d 304, 501 N.E.2d 920 (1986). In making this determination, a court should consider the purpose of the entire statute when construing one of its component sections. *Castaneda v. Illinois Human Rights Comm'n*, 132 Ill. 2d 304, 547 N.E.2d 437 (1989). See also *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 594 N.E.2d 1243 (1992) (a court should not construe an amendment as a change in the law where such a construction would conflict with the spirit of the statute and lead to an absurd or unjust result); *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 586 N.E.2d 1211 (1992) (court will not construe an act of the legislature so as to lead to absurd, inconvenient or unjust consequence).

■ In this case, as noted, it would be a victory of semantics over substance to hold that the late rental payment penalties that are restricted under the pre-1992 Ordinance can by a simple stroke of the pen be transformed into a discount by relabelling a lease's penalty provision as a "discount" and by incorporating an otherwise illegal late rental payment penalty into the leases' stated rent. The futility of such a result warrants a broader interpretation of the old ordinance and the consequent characterization of the new ordinance as a clarification in the law rather than as a change. See *Hyatt Corp. v. Sweet*, 230 Ill. App. 3d 423, 594 N.E.2d 1243. Moreover, there is no need to revert to a rule that would provide for a broader interpretation of the old ordinance, because, as previously discussed, a false discount disguising a penalty is not a "discount," but, rather, a penalty, encompassed under the penalty restriction of the ordinance. As previously pointed out, the complaint, whose well-pleaded allegations must be accepted as true for purposes of a section 2—615 motion, directly alleges that the so-called discount was a disguised penalty and supports this allegation with other factual averments that give rise to supporting inferences that the discount was a false one disguising what is in actuality a penalty. Therefore, the new

ordinance adds nothing with respect to false discounts, because they are already encompassed within its penalty restrictions as well as by those of the old ordinance. The only arguably new aspect of the amended Ordinance is in its regulation of *all* discounts, whether disguised penalties or *bona fide*. In so regulating, the amended Ordinance facilitates its own enforcement by relieving the trier of fact of the task of differentiating between disguised penalties and *bona fide* discounts, as now all of them are restricted.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

McNULTY, P.J., and HOURIHANE, J., concur.