On July 10, 2000, John Michael Tucker sued the Cullman-Jefferson Counties Gas District ("the District"), the entity that provides natural gas to his home. As amended, Tucker's complaint presented claims of fraud, breach of contract, "and/or other wrongful conduct." The action was brought as a class action pursuant to Rule 23, Ala.R.Civ.P. The proposed class consisted of those persons who, since May 1995, had purchased natural gas services from the District pursuant to a service contract with the District; had relied on alleged misrepresentations of fact concerning the District's billing practices; and had been damaged by an alleged breach by the District of the terms of its service contract with them.
On July 24, 2001, the District, pursuant to Rule 12(b)(6), Ala.R.Civ.P., filed a motion to dismiss Tucker's claims; Tucker opposed the motion. After various filings by the parties, the trial court, by a notation on the case action summary sheet, granted the District's motion to dismiss as to the fraud claim, but reserved consideration of the motion to dismiss as to the breach-of-contract claim.[1] Subsequently, the District filed a motion for a summary judgment. Following further submissions and briefing by the parties, the trial court entered a summary judgment for the District, without stating a rationale. Tucker appealed.
In his brief to this Court Tucker argues and cites authority only with respect to the summary judgment on his breach-of-contract claim; he never expresses disagreement with the dismissal of his fraud claim or the summary judgment as to his claim alleging "other wrongful conduct." Apparently, he has elected not to pursue those claims. "When an appellant fails to properly argue an issue, that issue is waived and will not be considered. Boshell v. Keith, 418 So.2d 89 (Ala. 1982)." Asam v.Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App. 1996). "An appeals court will consider only those issues properly delineated as such, and no matter will be considered on appeal unless presented and argued in brief. Ex parte Riley, 464 So.2d 92 (Ala. 1985)." Braxton v. Stewart,539 So.2d 284, 286 (Ala.Civ.App. 1988). Accordingly, we treat the fraud claim and the claim alleging "other wrongful conduct" as having been abandoned by Tucker, and we affirm the judgments as to those claims. Thus, we address only the propriety of the summary judgment on the breach-of-contract claim.
The record shows that on January 4, 1995, Tucker signed an "Application for Gas Service" ("the application") provided by the District. The application states, in relevant part: "The undersigned hereby makes application for gas service at the above address and agrees to pay for said service measured by the District's meter according to the rate applicable. . . . The applicant agrees that this Application is subject to the District's Rules and Regulations, a copy of which is attached and that these Rules and Regulations are part of this agreement. . . ." Those "Rules and Regulations" ("the rules") state, in pertinent part:
 "2. All charges for gas service are due and payable at the office or collection agencies of the [District], during *Page 320 
business hours, on or before the discount date shown on the bill. Bills paid after this date will not be entitled to the 10% discount, but will pay the gross amount shown on the bill. . . .
". . . .
 "8.(c) Consumer agrees that gas shall be purchased under the applicable rate. . . ."
(Emphasis added.) In a separately issued document entitled "Cullman-Jefferson Counties Gas District Rate Schedules" ("the schedules"),[2] which the District provided Tucker, the District set out the rates it charges for natural gas based upon the amount of gas consumed. A paragraph at the bottom of the schedules states:
 "PAYMENT: Bills for services rendered hereunder are payable within ten days from the date and if not paid within such period become delinquent and subject to charges set forth in the attached Rules and Regulations. Payments made after ten days from due date shall be greater by ten percent (10%)."
(Emphasis added.)
Each month, the District distributes uniform bills to its customers for payment for the natural gas services it has supplied. The front of each bill contains sections that specify, in sequence, the "Net Amount Due $ ___," the "Due/Discount Date ____," and the "After Discount Date $ ___," as well as other information not relevant to this case. On the back of each bill appears the statement, "AMOUNTS PAID AFTER THE `DUE/DISCOUNT DATE' SHOWN WILL NOT BE ENTITLED TO 10% DISCOUNT."[3] (Capitalization in original.) The method the District used to calculate the "Net Amount Due" was discussed in an affidavit of Mike McContha, the president of Computer Network, Inc., who oversaw the design of the utility management service, a computer billing program used by the District since 1992. He explained that the net amount due is derived by taking the pretax charge for the natural gas — determined by multiplying the amount of gas consumed by the applicable gas rate as provided by the schedules — and adding a four percent utility tax.
As stated in his complaint, Tucker contends that "[o]n all occasions, [he] paid to [the District] the `net amount due,' as represented on the monthly billing statement," and that "[o]n all occasions, [he] paid said amount prior to the `due discount date,' specified on said statement, in order to receive the 10% discount represented by [the District]." However, he says he never received a 10% discount, but he did avoid having to pay a penalty.
On appeal, Tucker contends that genuine issues of material fact exist as to (1) whether the District in fact offered a 10% discount for early payment of its gas bills; (2) whether the 10% penalty charged for late payment is legally permissible; and (3) whether the 10% penalty, if legally permissible, is reasonable.
Our review of a summary judgment is de novo.
 "In reviewing the disposition of a motion for summary judgment, `we utilize *Page 321 
the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542 (Ala. 1995); Rule 56(c), Ala. R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871
(Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
The District argues that its gas bills are not part of the contract entered into between it and a natural gas customer because they are not named in the application as materials forming "a part of this agreement," as are the rules. Nevertheless, the "bills" are referred to in the rules as implementing materials, particularly with respect to the fact that all charges are due and payable "on or before the discount date shown on the bill." Therefore, we conclude that the District has chosen to make the gas bills a part of the documents that make up the contract between it and its customers. For example, the schedules, on which the District heavily relies, also are not named as a contract document in the application but are alluded to only indirectly by the reference to the customer's obligation to pay "according to the rate applicable." Accordingly, the "contract" entered into by Tucker and the District includes the application, the rules, the schedules, and the monthly bills; thus, we deem it proper to consider those documents collectively to determine if an ambiguity was created.
Tucker first contends that a genuine issue of material fact exists as to whether the District in fact offered its customers a 10% discount in return for early payment of their gas bills. In that regard he argues that the language contained in the rules regarding "the 10% discount" is at least ambiguous, even when read in the context of the application, the schedules, and the monthly bill sent to the customer, and thus presents a question to be determined by the jury. The District argues that there is no ambiguity in the contract that would present a jury question. Specifically, the District argues that it informed Tucker "[i]n at least three separate places" that he would have to pay the "applicable rate": "in 1.) the Contract contained on the [application], 2.) in the [rules], and 3.) in the [schedules] themselves." The District also contends that on each bill it sent to Tucker it itemized the charges for gas service for the applicable billing period, the applicable taxes, and any additional charges such as late fees, and it further contends that only in the event Tucker failed to pay his gas bill by the "Due/Discount Date" would additional charges apply. The District points out that also listed on the gas bill was a specific dollar amount that would be due "after *Page 322 
discount date," which amount was always 10% greater than the "Net Amount Due" figure shown on the bill. Thus, the District asserts that Tucker knew he was being charged the "applicable rate" when he paid his bill on or before the "Due/Discount Date."
The District argues that although the term "discount" is used at several places in the materials distributed to its customers, it "did not rely upon its customers' intuitive understandings of the term. Rather, [it] provided each customer with [the schedules] that spelled out the customer's obligations."
 "Whether a contract is ambiguous is a question of law for the court to determine. Haddox [v. First Alabama Bank,] 449 So.2d [1226,] at 1228 [(Ala. 1984)]. When the terms of the contract are clear and certain, it is the duty of the court, not the jury, to analyze the contract and determine the meaning of the contract. Palmer v. Perry County Bd. of Educ., 496 So.2d 2, 5
(Ala. 1986). However, once a court determines that an instrument is ambiguous or uncertain in any respect, it becomes a question for the factfinder to determine the true meaning of the contract. Shadrick v. Johnston, 571 So.2d 1008, 1013 (Ala. 1990). Ambiguity exists when a term is reasonably susceptible to more than one interpretation. Cannon v. State Farm Mut. Auto. Ins. Co., 590 So.2d 191, 194 (Ala. 1991)."
Ex parte Harris, 837 So.2d 283, 290 (Ala. 2002). In order to determine whether an ambiguity exists in the contract entered into by Tucker and the District, we must consider the meaning of the term "discount," as that term is used in the rules and in the bills prepared by the District, particularly in contradistinction to the term "penalty" used in the schedules.
It is undisputed that, in practice, the "net amount due" reflected on a customer's bill was the full amount calculated by multiplying the applicable rate on the schedules by the amount of natural gas consumed and adding a four percent utility tax. It is also undisputed that a 10% "penalty" was added to that amount for bills paid after the "due/discount date." The term "discount" is defined as "[a] reduction made from the gross amount or value of something." Merriam-Webster's CollegiateDictionary (10th ed. 2002). "A reduction from the full amount of value of something, esp. a price." Black's Law Dictionary 477 (7th ed. 1999).
 "Cash discounts to a consumer are offered as incentives for prompt payment to alleviate accounts receivable collection problems suffered by suppliers. See generally William M. Pride O.C. Ferrell, Marketing, at 445 (3rd ed. 1983). Discounts are used to encourage certain behavior not otherwise required of a party, and are implemented by rewarding that behavior through assuming some detriment in the hopes of achieving some corresponding gain. See, e.g., Saxon-Western Corp. v. Mahin, 81 Ill.2d 559, 44 Ill. Dec. 273, 411 N.E.2d 242 (1980) (noting that `retailer had forgone realizing cash receipts by issuing discount coupons in hope of increasing volume of his business'). See also Northern Illinois Home Builders Ass'n, Inc. v. County of Du Page, 165 Ill.2d 25, 208 Ill. Dec. 328, 649 N.E.2d 384 (1995) (discussing ordinance which offers 15 percent discount to encourage the use of payment according to a certain fee schedule); Ted Sharpenter, Inc. v. Illinois Liquor Control Commission, 119 Ill.2d 169, 115 Ill. Dec. 603, 518 N.E.2d 128 (1987) (discussing plaintiff's practice of offering different discounts to different classes of customers in the hopes of maximizing sales at the lowest cost *Page 323 
possible). Thus, it would seem that a discount is a reduction in the price to be paid in order to create incentives for behavior not otherwise required of or expected from the discountee."
Friedman v. Krupp Corp., 282 Ill. App.3d 436, 441, 668 N.E.2d 142, 146, 217 Ill. Dec. 957, 961 (1996). "Penalty," on the other hand, is defined as ". . . 2: the suffering or the sum to be forfeited to which a person agrees to be subjected in case of nonfulfillment of stipulations. 3a: a disadvantage, loss, or hardship due to some action." Merriam-Webster'sCollegiate Dictionary. "`A penalty is a sum which a party . . . agrees to pay or forfeit in the event of a breach . . . ." Black's 1154 (quoting Charles T. McCormick, Handbook on the Law of Damages § 146, at 600 (1935)). Considering those definitions and the various uses of those terms in the rules, the schedules, and the gas bills, we conclude that an ambiguity exists as to whether the use of the term "discount" entitled Tucker to a 10% discount for early payment of his gas bill, i.e., payment before the "Due/Discount Date," or as the District argues, entitled him only to a "discount" from the "penalty" that would be imposed in the event Tucker did not pay his gas bill on or before the "Due/Discount Date."
The District argues that language contained in the schedules provided Tucker "at the very least" with constructive knowledge of how he would be billed and the fact that he would be subject to a 10% increase in the amount owed for the late payment of his gas bill. But the paragraph contained in the schedules on which the District relies reveals an ambiguity as to what "the date" is.[4] As noted, that paragraph reads:
 "PAYMENT: Bills for services rendered hereunder are payable within ten days from the date and if not paid within such period become delinquent and subject to charges set forth in the attached Rules and Regulations. Payments made after ten days from due date shall be greater by ten percent (10%)."
(Emphasis added.)
Nothing in the application, the rules, or the schedules explains or defines the use of the term "the date" as it appears in first sentence of the paragraph. The paragraph explicitly states that the 10% penalty will not be levied except as to a "[p]ayments made 10 days after the duedate." (Emphasis added.) The rules and the bills, on the other hand, state that customers who do not pay the bills "on or before the discount date" will not be entitled to the 10% discount, but will pay "the gross amount shown on the bill," i.e., the amount as enhanced by the 10% penalty. As noted, the bills show a "due/discount date," creating an uncertainty as to whether the 10% penalty is imposed only for bills paid 10 days after the due date and whether bills paid before the "due/discount date" should receive a 10% discount.
We conclude that the contract is ambiguous as to whether Tucker was ever to receive a 10% discount for early payment of his gas bill, i.e., on or before the due/discount date, or was by such timely payment simply avoiding the imposition of a 10% penalty. Accordingly, we hold that the terms of the contract entered into between Tucker and the District regarding the "10% discount" and the "10% penalty" are ambiguous, thereby presenting a question for the trier of fact as to the proper interpretation and application of those terms. Ex parte Harris, supra. *Page 324 
Given our disposition of the breach-of-contract claim, we pretermit any discussion of the legality, or reasonableness, of a 10% late-payment penalty. Moreover, Tucker expressly alleged in his complaint that he had always paid his bills in advance of the due/discount date; therefore, he would never have incurred any penalty.
For the foregoing reasons, the judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, BROWN, JOHNSTONE, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in the result.
[1] The trial court's order does not address Tucker's allegation of "other wrongful conduct."
[2] The record does not reveal the date on which the District provided Tucker with a copy of the schedules, but Tucker does not contest that he received a copy of them or that they are applicable to him.
[3] We note that this bill form was revised in August 1998. Before the 1998 revision, bills distributed by the District contained language that stated "Amounts Paid After `Past Due Date' Shown Will Have a 10% Penalty Added." The bill form containing that language had been implemented in May 1997. The bill form used by the District from January 1992 through April 1997 did not contain any reference to a 10% penalty.
[4] The Court notes that Tucker signed the application on January 4, 1995, and that the effective date of the schedules, as evidenced by the record, was May 1, 1995. However, Tucker has not argued that the schedules are not applicable to him.