42 So.3d 1239 (2010)
L.T.
v.
W.L. and T.L.
2090007.
Court of Civil Appeals of Alabama.
February 12, 2010.[*]
*1240 Barry C. Leavell of Leavell & Associates, L.L.C., Northport, for appellant.
Kenneth E. Gibbs and Harold S. Patrick of Gibbs, Patrick & Sears, LLP, Opelika, for appellees.
THOMAS, Judge.
L.T. ("the mother") appeals from the denial of her Rule 60(b), Ala. R. Civ. P., motion seeking to have the judgment terminating her parental rights to C.K. ("the child") set ineffective assistance. The mother's parental rights were terminated on the petition of W.L. ("the maternal grandfather") and T.L. ("the maternal stepgrandmother") (collectively referred to as "the maternal grandparents") by a judgment entered on January 5, 2009. The mother appealed the termination of her parental rights; this court affirmed the judgment. See L.T. v. W.L., [Ms. 2080369, Nov. 6, 2009] ___ So.3d ___ (Ala. Civ.App.2009). While the appeal of the termination judgment was pending, the mother sought and received leave to file a Rule 60(b) motion in the trial court. See Rule 60(b) ("Leave to make the motion need not be obtained from any appellate *1241 court except during such time as an appeal from the judgment is actually pending before such court.").
The mother's Rule 60(b) motion alleged seven different errors that the mother's trial counsel had allegedly committed during the course of the termination proceedings. The mother first alleged that her counsel had failed to meet with her to prepare her for trial. The mother then alleged that counsel had failed to timely raise a conflict of interest arising from the mother's having had a consultation with Kenneth Gibbs, the maternal grandparents' counsel, before the filing of the termination petition. The mother further alleged that counsel had failed to provide the mother a copy of a judgment entered in July 2008, in which the trial court had outlined several requirements for the mother to meet to avoid termination of her parental rights, and that counsel had informed V.L. ("the maternal grandmother") that a December 15, 2008, review hearing had been canceled and would be rescheduled, resulting in the mother's failure to attend that review hearing. The mother also complained that counsel had improperly failed to object to the December 15, 2008, review hearing being held via telephone and that counsel had failed to object to the admission of hearsay evidence. Finally, the mother alleged that counsel had failed to timely argue that the original dependency judgment should be set aside because the mother had not been not properly served.
The maternal grandparents responded to the mother's motion, arguing that the mother's counsel had not been ineffective. Their response specifically challenged the mother's reliance on the alleged failure of the mother's counsel to challenge the original dependency judgment by pointing out that the mother's original trial counsel had moved to have the dependency judgment set aside and that the trial court had denied that motion in July 2008. The maternal grandparents also disputed that any conflict existed as a result of the consultation the mother had had with their attorney, Gibbs; they appended to their motion a page of the trial transcript in which the mother testified that Gibbs had talked with her but that he had not represented her and in which she admitted that Gibbs had informed her, once he learned that the Department of Human Resources ("DHR") had been involved with the family, that he could not represent her. Regarding the mother's allegation that her counsel had failed to properly object to the introduction of hearsay testimony, the maternal grandparents argued that the mother had failed to indicate how any alleged hearsay testimony had prejudiced her. Finally, the maternal grandparents argued that the alleged failure of counsel to provide the mother a copy of the July 2008 judgment could not have prejudiced the mother because she was present with counsel on the date of the trial in July 2008 and, thus, should have received notice of that judgment; the maternal grandparents alleged that the mother had a history of complaining of a lack of notice and a history of failing to comply with court orders.
On September 18, 2009, the trial court held a hearing on the Rule 60(b) motion, at which the mother, the maternal grandmother, and the maternal stepgrandmother testified. After the hearing, the trial court entered a judgment denying the mother's Rule 60(b) motion, without a detailed explanation. The mother appeals.
Rule 60(b) provides:
"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) *1242 newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. Leave to make the motion need not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court. If leave of the appellate court is obtained, the motion shall be deemed to have been made in the trial court as of the date upon which leave to make the motion was sought in the appellate court. This rule does not limit the power of a court to entertain an independent action within a reasonable time and not to exceed three (3) years after the entry of the judgment (or such additional time as is given by § 6-2-3 and § 6-2-8, Code of Alabama 1975) to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, supersedeas, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."
The mother's motion, because it was filed more than four months after the entry of the termination judgment and because it alleges ineffective assistance of counsel, was brought pursuant to subdivision (6) of Rule 60. As we have explained in a similar situation involving a Rule 60(b)(6) motion seeking relief from a judgment on an ineffective-assistance-of-counsel ground, we review the trial court's decision on such a motion only for an abuse of discretion. E.S.R. v. Madison County Dep't of Human Res., 11 So.3d 227, 239 (Ala.Civ.App. 2008).
We have explained the heavy burden placed on a party claiming ineffective assistance of counsel. E.S.R., 11 So.3d at 238-39.
"[T]o prevail on a claim of ineffective assistance of counsel, a party must show (1) that his or her counsel's performance was deficient and (2) that he or she was prejudiced as a result of the deficient performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)."
Id. at 238. The party seeking to establish the ineffectiveness of his or her counsel "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Strickland Court explained that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Merely showing that the errors complained of "had some conceivable effect on the outcome of the proceeding" is not sufficient. Id. at 693, 104 S.Ct. 2052. "Judicial scrutiny of counsel's performance must be *1243 highly deferential," so a trial court must begin its review of an ineffective-assistance-of-counsel claim by "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 104 S.Ct. 2052.
The Strickland Court also observed the following about the analysis of an ineffective-assistance-of-counsel claim:
"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."
Id. at 697, 104 S.Ct. 2052.
On appeal, the mother raises three main issues.[1] She first argues that the failure of her counsel to raise the alleged conflict of interest caused by Gibbs's consultation with her prejudiced her. She says that Gibbs's consultation with her involved a long conversation and that Gibbs provided her with a copy of the original dependency judgment, which had required the mother to pay child support to the maternal grandparents. The mother has maintained throughout the proceedings that she never received notice of the earlier dependency proceeding or of the judgment resulting from it. The mother argues that Gibbs should have been called as a witness for her in the July 2008 trial, apparently to establish the fact that the mother had not received notice of the original dependency judgment.
We disagree. The mother clearly testified at the July 2008 trial that she had not received notice of the earlier dependency proceeding or of the resulting judgment. Gibbs could have testified only to the fact that he provided the mother a copy of the judgment. He could not have testified to the fact the mother desired to provethat she had never received notice of or a copy of that judgmentbecause he could not know what the mother had or had not received. The mother is unable to establish any prejudice caused by Gibbs's failure to testify to the fact that he provided her a copy of the order, a fact that the mother herself established in her own testimony at the July 2008 trial.
In addition, the mother's testimony at the July 2008 trial was that Gibbs had not represented her. She did testify that she thought she had paid him a consultation fee, but the mother did not testify that she believed that she and Gibbs ever had an attorney-client relationship. She admitted that Gibbs informed her that he could not represent her because of a potential conflict due to his firm's representation of DHR. The mother has not presented any authority indicating that an *1244 attorney who consults with a potential client and who then refuses to represent that client may not choose to represent an opposing party in an action involving that potential client. Nor does the mother articulate if or how any knowledge Gibbs might have gleaned from the consultation with the mother created a conflict of interest such that it precluded his representation of the maternal grandparents. See Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ("[U]ntil a [party] shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance."). Thus, we cannot agree that the trial court erred when it denied the mother's motion for relief from the termination judgment insofar as it was based on this ground.
The mother also argues on appeal that she was prejudiced by her counsel's failure to provide her a copy of the July 2008 judgment and her counsel's providing the maternal grandmother misinformation regarding a continuance of the December 15, 2008, review hearing. The mother specifically argues that she was prejudiced by the failure to receive a copy of the July 2008 judgment because, she says, as a result, she did not know what the trial court expected of her to prevent the termination of her parental rights. The mother further argues that her counsel's providing misinformation regarding a continuance of the December 15, 2008, review hearing prejudiced her by preventing her from attending that hearing.
Although we cannot disagree that a counsel's failure to provide a copy of a judgment to a client and counsel's misinforming a client about the date of a hearing could both potentially result in prejudice severe enough to affect the result of a particular case, the mother is required to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. A review of the transcript of the testimony presented at the Rule 60(b) hearing and at the July 2008 trial reveals that the mother was present at the July 2008 trial; that the trial court had indicated at the conclusion of the trial that it was inclined to have the mother meet certain requirements to prevent termination of her parental rights, including, specifically, requiring her to attend parenting classes; and that the mother recalled the trial court's instructions, at least insofar as it mentioned parenting classes. When asked about what she had done to comply with the trial court's order regarding parenting classes, the mother indicated that she had expected a written order to tell her "about" the parenting classes and that she had finally sought out parenting classes on her own, but not until January 2009. The mother said that she had made several telephone calls to counsel to inquire about the July 2008 judgment, that she had left messages, and that counsel had failed to return any of her calls. The mother admitted that she had not complied with any requirements set out in the trial court's July 2008 judgment.
Based on comments made during the Rule 60(b) hearing, it is clear that the trial court concluded, based on the mother's own admission and its recollection of the July 2008 trial, that the mother had known at the least that she was required to complete parenting classes and that she knew that a written order was to have been forthcoming. Because the mother took no action to comply with a requirement she admitted she knew existed and made only minimal efforts, limited to several telephone calls to counsel, to determine what other requirements the trial court had set out in the written order that the mother *1245 knew would be forthcoming, the trial court concluded that the mother exhibited a lack of commitment to making the changes necessary to prevent termination of her parental rights, which was consistent with the evidence it had received at the July 2008 trial regarding the mother's commitment to being a proper parent to her child. Thus, the trial court apparently concluded that, even if counsel had failed to provide the mother with the July 2008 judgment and even if counsel had failed to notify the mother of the December 15, 2008, review hearing, those failures did not prejudice the mother because the result of the December 15, 2008, review hearing would not have been any different due to the mother's history of allowing others to take on her parental duties and the mother's failure to take any responsibility for her own actions. Based on the testimony at the July 2008 trial and at the Rule 60(b) hearing, we agree with the trial court's conclusion that the mother failed to demonstrate a reasonable probability that the result of the December 15, 2008, review hearing would have been different had the mother received a copy of the July 2008 judgment and had she been informed of the December 15, 2008, review hearing so that she could be present.
The mother's final argument on appeal is that the trial court abused its discretion in denying the mother's Rule 60(b) motion because the trial court's own reasoning in doing so points to the ineffectiveness of the mother's counsel. The trial court remarked during the Rule 60(b) hearing that the mother should have known, even without reference to the July 2008 judgment and the comments at the conclusion of the July 2008 trial, what type of changes she would be required to make based on the evidence at that trial indicating that her parental rights should be terminated. The trial court also indicated that the mother's lack of diligence in trying to discover the requirements placed on her in the July 2008 judgment militated against granting her relief from the January 2009 termination judgment.
According to the mother, she would have done anything requested of her to avoid termination of her parental rights, so, she asserts, the fact that the trial court believed that she should have done more supports the conclusion that she was prejudiced by not having the July 2008 judgment to delineate the actions she should take. As noted above, the mother knew that she would, at a minimum, be required to attend parenting classes. Being aware of that requirement, however, was of no benefit to the mother, who failed to seek out parenting classes until after the trial court had terminated her parental rights. Thus, the trial court could well have doubted the sincerity of the mother's claim that she would have complied with the requirements set out in the July 2008 judgment even had she known them with particularity. The trial court's observations of the mother during both the July 2008 trial and the Rule 60(b) hearing permitted it to make credibility determinations and to weigh her testimony that she would have met the requirements set for her against her past actions, which, according to the trial court, had indicated a "woefully inadequate" ability to parent. See Ex parte Fann, 810 So.2d 631, 638 (Ala.2001).[2]
*1246 Based on our review of the transcript of the July 2008 trial, the transcript of the December 2008 review hearing, and the transcript of the Rule 60(b) hearing, we cannot agree with the mother that the trial court abused its discretion in determining that the mother was not entitled to relief from the January 2009 termination judgment due to the alleged ineffective assistance of her counsel. The mother failed to meet her burden of proving that, if it were not for the errors she complained of, the outcome of her termination trial would, in all reasonable probability, have been different. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The trial court itself stated that the outcome would not have changed because the grounds for termination existed in July 2008 and the mother's failure to take advantage of a last chance to salvage her parental relationship with the child despite being advised of at least some of the requirements in open court had firmly convinced the trial court that the mother's rights should be terminated. We see no abuse of the trial court's discretion here.
AFFIRMED.
PITTMAN, J., concurs.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur in the result, without writings.
NOTES
[*] Note from the reporter of decisions: This opinion was released by the Court of Civil Appeals under the date February 12, 2010. This case was actually released to the public on February 16, 2010.
[1] Because she raises no arguments on appeal related to her counsel's alleged failure to prepare her for trial, her counsel's failure to object to the telephonic hearing, and her counsel's alleged failure to object to the admission of hearsay testimony, the mother has waived those issues on appeal. See Tucker v. Cullman-Jefferson Counties Gas Dist., 864 So.2d 317, 319 (Ala.2003) (stating the general principle that the failure to present and argue an issue in an appellant's brief amounts to a waiver of that issue on appeal).
[2] The supreme court explained in Ex parte Fann that the ore tenus presumption is based on the unique position of the trial court, a position which allows it to

"`discern[] the demeanor and other like intangibles which do not transfer so readily in a transcript.' Shepherd v. Shepherd, 531 So.2d 668, 671 (Ala.Civ.App.1988). Stated another way, `the deference given to the trial court by the ore tenus rule is, in part, due to the trial court's unique position to see and/or hear something that may not be apparent on the face of the written record.'... Willing v. Willing, 655 So.2d 1064, 1068 (Ala.Civ.App. 1995) [(Thigpen, J., concurring in part and dissenting in part) ]. See Dobbins v. Dobbins, 602 So.2d 900, 901 (Ala.Civ.App.1992) (`The reason for the ore tenus rule is [well established], i.e., that the trial court had the opportunity to observe the witnesses as they testified, to judge their credibility and demeanor, and to observe what this court cannot perceive from a written record.')."
Ex parte Fann, 810 So.2d at 638.